[No. S007641. July 31, 1989.]

BERNARD P. McCULLOUGH, Petitioner, v.
COMMISSION ON JUDICIAL PERFORMANCE, Respondent.

**COUNSEL**

David E. Pipal and Rusconi, Foster, Thomas & Pipal for Petitioner.

John R. Coughlin, Frank P. Borelli, Steven R. Sanders, Harry J. Tobias, James M. Paxton and John H. O'Brien as Amici Curiae on behalf of Petitioner.

John K. Van de Kamp, Attorney General, Aileen Bunney, Michael D. O'Reilley and Mark S. Howell, Deputy Attorneys General, for Respondent.

**OPINION**

**THE COURT.**—The Commission on Judicial Performance (hereafter the Commission) unanimously recommends that we remove Bernard P. McCullough from his office as judge of the Justice Court of the San Benito Judicial District, San Benito County. Judge McCullough asks us to reject the Commission's recommendation, alleging that it is not supported by the evidence. The San Benito County Bar Association filed an amicus curiae brief in support of Judge McCullough's position. After reviewing the record and the judge's objections, we adopt the Commission's recommendation.

### BACKGROUND

Judge McCullough was born and raised in Hollister, California. After practicing law in San Francisco for almost 10 years, he returned to Hollister in 1967 to serve as District Attorney of San Benito County. In 1977, he was appointed to the Justice Court, and has since been elected and reelected.

In April 1987, we publicly censured Judge McCullough for failing to decide a case for almost four years and for continuing to execute salary affidavits even though cases remained pending in his court for more than 90

days. (See discussion of count 6, *infra*, p. 197.) At that time, we noted that he had ignored three private admonishments from. the Commission to act promptly on the cases before him. (*In re McCullough* (1987) 43 Cal.3d 534, 535 [236 Cal.Rptr. 151, 734 P.2d 987].)

In the instant matter, the Commission served Judge McCullough with a notice of formal proceedings on September 24, 1987, alleging six counts of misconduct. (Cal. Rules of Court, rule 905; all subsequent rule references are to the California Rules of Court.) Count 1 alleges that Judge McCullough abridged a defendant's right to trial by an impartial jury when he directed the jurors to find the defendant guilty. Count 2 alleges that he used his judicial office to advance the private interests of a personal friend by continuing the friend's case for over two years, and then dismissing it without explanation in violation of Penal Code section 1385, subdivision (a). The third and fourth counts allege that the judge violated defendants' rights to representation when he ordered their trials to proceed in the absence of their attorneys. Count 5 involved the judge's failure to advise convicted misdemeanants of their rights on appeal under rule 535. The sixth count alleges that he failed to perform his judicial duties by not disposing of a matter pending before him for over six years.

We appointed the Honorable Robert K. Barber, retired judge of the Alameda County Superior Court, the Honorable George H. Barnett, retired judge of the Santa Clara County Superior Court, and the Honorable Jane A. York, judge of the Fresno County Justice Court, to serve as special masters, to take evidence on the alleged counts of misconduct, and then to report their findings to the Commission. (Rule 907.) The hearing spanned four days in May 1988. (Rules 908, 909.) The special masters concluded that counts 1, 2, 3 and 4 constituted wilful misconduct in office, that count 5 did not constitute misconduct at all, and that count 6 constituted persistent failure by the judge to perform his judicial duty. (Rule 912.)

In October 1988, the Commission accepted the special masters' characterization of counts 1, 2, 4, and 6, dismissed count 5, but concluded that count 3 constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute rather than wilful misconduct. By a vote of eight to zero, it recommended removal of Judge McCullough. (Rule 917.) The judge then petitioned this court for review of the recommendation. (Rule 919(b).)

STANDARD OF REVIEW

■     When disciplining a member of the judiciary, we undertake an independent evaluation of the record in order to determine whether clear and

convincing evidence supports the Commission's recommendation. (*Ryan* v. *Commission on Judicial Performance* (1988) 45 Cal.3d 518, 530 [247 Cal.Rptr. 378, 754 P.2d 724].) In so doing, we give special weight both to the factual findings of the special masters, because of the masters' ability to evaluate the credibility of the witnesses at the hearing, and to the conclusions of the Commission, because of its expertise in matters of judicial conduct. (*Ibid.*)

■ We may censure or remove a judge for engaging in "wilful misconduct in office, persistent failure or inability to perform the judge's duties, habitual intemperance in the use of intoxicants or drugs, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute." (Cal. Const., art. VI, § 18, subd. (c).)[1] Wilful misconduct, the most serious charge, occurs when a judge commits acts (1) which he knows, or should know, are beyond his authority (2) for reasons other than the faithful discharge of his duties. (*Furey* v. *Commission on Judicial Performance* (1987) 43 Cal.3d 1297, 1305 [240 Cal.Rptr. 859, 743 P.2d 919].) Though a judge must act in bad faith (*id.*, at p. 1304) in order to commit wilful misconduct, he need not necessarily seek to harm a particular litigant or attorney; disregard for the legal system in general will suffice. (*Geiler* v. *Commission on Judicial Qualifications* (1973) 10 Cal.3d 270, 286 [110 Cal.Rptr. 201, 515 P.2d 1].) Unlike wilful misconduct, the charge of prejudicial conduct does not require the presence of bad faith. (*Furey, supra,* 43 Cal.3d at p. 1304.) It occurs when a judge, though acting in good faith, engages in conduct which adversely affects public opinion of the judiciary. (*Geiler, supra,* 10 Cal.3d at p. 284.) Though "less grave" than wilful misconduct (*id.*, at p. 283), prejudicial conduct may nevertheless, by itself, justify removal. (*id.*, at p. 284, fn. 11.) Persistent failure, also an independent ground for removal, focuses on a judge's legal and administrative competence and omissions.

## COUNT 1—THE SUMAYA MATTER

■ Count 1 alleges that Judge McCullough abridged Richard Sumaya's right to trial by an impartial jury by directing the jurors sitting on his case to find him guilty. Sumaya plead not guilty to a charge of riding a bicycle while under the influence of alcohol. (Veh. Code, § 21200.5.) The matter proceeded to trial. During the prosecution's closing argument to the jury, Judge McCullough interrupted the prosecutor, told him to "sit down," and then said to the jurors: "Ladies and gentlemen, I want you to go in that

---

[1] We will refer to "wilful misconduct in office" as "wilful misconduct," "persistent failure or inability to perform the judge's duties" as "persistent failure," and "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" as "prejudicial conduct." "Habitual intemperance in the use of intoxicants or drugs" is not at issue in this case.

room and find the defendant guilty." Five minutes later, when the jurors returned with a guilty verdict, the judge commented that, "For a while there, ladies and gentlemen, I thought you were not going to follow my instructions." After conviction, the district attorney's office contacted Sumaya's counsel, advising him to appeal; following Sumaya's appeal, the appellate department of the superior court eventually reversed the conviction.

In response to this charge, Judge McCullough claims that he directed the jury to bring in a guilty verdict because Sumaya had admitted all elements of the offense on the witness stand. The record supports a finding, however, that Sumaya never actually testified at trial. He also asserts that, at the time of Sumaya's trial, he believed that federal law allowed a judge to direct a guilty verdict when the defendant's guilt is, in the view of the judge, undisputed. He now acknowledges that neither federal nor state law authorizes such an instruction, regardless of the judge's opinion of the defendant's guilt. Moreover, he clearly *should* have known that attempting to direct a jury to return a guilty verdict in a criminal action was beyond his judicial authority. (*Gonzalez* v. *Commission on Judicial Performance* (1983) 33 Cal.3d 359, 369 [188 Cal.Rptr. 880, 657 P.2d 372] ["Petitioner's patent misunderstanding of the nature of his judicial responsibility serves not to mitigate but to aggravate the severity of his misconduct."].)

The judge further argues that witnesses at the hearing before the special masters gave contradictory testimony regarding the number of witnesses who actually testified at Sumaya's trial and whether the police had subjected Sumaya to a blood-alcohol test. Resolution of these testimonial contradictions is irrelevant to the issue before us, however, because the Commission's charge of wilful misconduct did not rest on proof of those facts. Judge McCullough admits that he committed the act which formed the basis of the Commission's charge, i.e., that he directed the jury to find Sumaya guilty. Finally, the fact that Sumaya's conviction was reversed does not justify or excuse the judge's action. Depriving a criminal defendant of his fundamental right to be tried by a jury manifests disrespect for the constitutional protections of our legal system. We conclude that Judge McCullough's instruction to the jury directing a guilty verdict constituted wilful misconduct.

### COUNT 2—THE CERRATO MATTER

■ Count 2 alleges that Judge McCullough used his judicial office to advance the private interests of Frank Cerrato, a personal friend of his, by continuing Cerrato's criminal case for over two years and then dismissing it without explanation, in violation of Penal Code section 1385, subdivision

(a). The criminal action against Cerrato arose out of a domestic dispute between Cerrato and his wife. The police went to the Cerrato home in response to a call; when Mrs. Cerrato refused to file a criminal complaint against her husband, the district attorney's office charged him with obstructing a police officer in the performance of his duties. (Pen. Code, § 148.)

Frank Cerrato and his twin brother Harold are lifelong friends of Judge McCullough; Harold was a member of the board of supervisors when the board first appointed the judge to the bench. The day before Frank's arraignment, the Cerratos went to the judge's home, where Frank told the judge the story of his arrest and asked the judge to excuse him from appearing on the next day. (The Cerratos owned an apricot orchard and Frank's arrest occurred in the midst of the harvest season.) Frank testified at the hearing before the special masters that Judge McCullough told him that the arresting officer had apparently "overreacted" and that he "should go home and pick his apricots." Frank did not appear in court on either the next day or any later date, and testified that he "presumed" the district attorney had dismissed the case when the court returned the bail money to his brother two years later.

The judge admits that he committed the acts that form the basis of the Commission's charge—that he had an improper ex parte conversation with Frank,[2] never arraigned him on the obstructing charge, continued the case approximately 20 times over a 2-year period, later took the case off calendar, and eventually dismissed the case, without ever explaining his actions or advising the district attorney's office.[3] In addition, he failed to disqualify and recuse himself from the case even though he stated that he planned to do so.

In his defense, the judge alleges that he continued the case 20 times because he was waiting for some action by the district attorney's office, and that he dismissed the case because the office never took any action.[4] How-

---

[2] During the Commission's investigation, the judge admitted in correspondence with the Commission that he had spoken about the case with Harold but failed to disclose his conversation with Frank.

[3] Under the calendaring system in use at the time, the district attorney's office did not attend arraignment calendars and did not track a case until the court completed arraignment and set the matter for pretrial hearing or trial. The court provided the district attorney's office with an advance copy of the arraignment calendar and, following completion of the calendar, would send another copy reflecting what action was taken on the matters on calendar for that day. A clerk in the district attorney's office notified the deputy assigned to the case only when a completed calendar showed that the court had arraigned the defendant and scheduled either a pretrial hearing or trial. By failing to arraign Cerrato, Judge McCullough effectively kept the case from being monitored by the district attorney's office.

[4] After he spoke to Frank at his home, Judge McCullough informally asked a prosecutor to "take a look at" the Cerrato case. The prosecutor told the judge he would review the com-

ever, the responsibility for the arraignment rested with Judge McCullough, as the presiding judge, not with the district attorney's office.[5]

Using the power of the bench to benefit a friend is a casebook example of wilful misconduct. (*Spruance* v. *Commission on Judicial Qualifications* (1975) 13 Cal.3d 778, 798 [119 Cal.Rptr. 841, 532 P.2d 1209]; see also Cal. Code Jud. Conduct, canon 2B ["Judges should not allow their families, social, or other relationships to influence their judicial conduct or judgment. Judges should not lend the prestige of their office to advance the private interests of others . . . ."].) Judge McCullough certainly should have known that failing to arraign Cerrato, continuing the case several times, and then dismissing it was improper. The evidence supports the conclusion that his reason for taking these actions was not the faithful discharge of his judicial duties. (*Gonzalez, supra,* 33 Cal.3d 359, 369.) Moreover, in view of his extrajudicial discussion with the Cerrato brothers about Frank's arrest and his long-term friendship with them, he should have promptly disqualified himself from the case. (Cal. Code Jud. Conduct, canon 3C(1) ["Judges should disqualify themselves in a proceeding in which . . . their impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party . . . ."].) We conclude that the judge's handling of the Cerrato case constituted wilful misconduct.

### COUNT 3—THE O'BRIEN MATTER

■ Count 3 alleges that the judge violated Amelia O'Brien's right to representation when he ordered her trial to proceed despite the absence of herself and her attorney. O'Brien was charged with driving while under the influence of alcohol. (Veh. Code, § 23152, subd. (a).) On the day before her scheduled trial in San Benito County, a court in another county had ordered O'Brien's attorney to appear before it on the following day. Due to the trial conflict, O'Brien's attorney had his secretary telephone Judge McCullough's chambers to request a continuance of the O'Brien trial. A court clerk advised the secretary to contact the district attorney's office. The district attorney had no objection to the continuance but informed the attorney that the court normally required 48 hours' written notice of requests for continuances. Since he did not have sufficient time to prepare a

---

plaint, and decided to do so when the case appeared on the pretrial calendar. Since Judge McCullough kept the case off the pretrial calendar, the prosecutor never took any action on the case and testified that he had forgotten about it until it came up in the proceedings before the Commission.

[5] The actual dismissal of the case stemmed from the chief clerk's comment that she was "getting sick and tired of having to account for that $150 [bail money] each month." When she asked the judge how to handle the case, he told her to "Get rid of it" and she entered the dismissal on the docket.

written motion for a continuance, O'Brien's attorney arranged for a local attorney to make a special appearance at the trial to make the request. The local attorney, however, did not appear personally at the court on the following day, but instead telephoned the court with the request for a continuance.

Judge McCullough denied the request and ordered the trial to proceed—despite the absence of the defendant, her counsel of record, or the local attorney.[6] Moreover, the prosecutor on the case informed the judge that he did not object to a continuance, and suggested that the judge impose sanctions on O'Brien's attorney for failing to comply with the court's 48-hour rule instead of ordering the trial to proceed.[7] Later that day, O'Brien's counsel learned that the trial had proceeded without him or his client and made a motion for a new trial, which the judge granted.

Judge McCullough correctly asserts that the power to grant a continuance, along with the power to impose sanctions on parties who do not comply with the requirements for requesting a continuance, are discretionary under section 1050 of the Penal Code. Although section 1050 does make the granting of continuances and the imposition of sanctions discretionary, a judge *must* hold a hearing to determine whether the noncomplying request was made in good faith. Judge McCullough failed to hold such a hearing. The hearing would have been the proper forum for determining whether the court had already granted an excessive number of continuances in the case and whether the court could have reasonably expected defense counsel to appear on the scheduled date. Moreover, Judge McCullough should have given greater consideration to the statutory option of sanctioning defense counsel, rather than penalizing the defendant by ordering the trial to proceed in the absence of both her and her attorney. His stated goal of expediting the adjudication of cases in his court, though laudable, should not blind him to the fundamental elements of a fair criminal proceeding.

The special masters found that the allegations of count 3 constituted wilful misconduct; the Commission disagreed and concluded that count 3 constituted only prejudicial conduct. We agree with the special masters. Conducting judicial proceedings in the absence of the defendant and her counsel seriously interferes with the defendant's Sixth Amendment right to

---

[6] The judge does not argue, nor does the record reveal, that O'Brien waived her right to be present pursuant to Penal Code sections 977 and 1043.

[7] Subdivision (b) of section 1050 of the Penal Code requires a party to make a request for a continuance in writing two days before trial; subdivision (c) allows a party to request a continuance without complying with the requirements of subdivision (b), but also allows the court to impose sanctions for noncompliance. Subdivision (d) requires the court to hold a hearing to determine whether there was good cause for the party's noncompliance with subdivision (b).

representation. Though Judge McCullough may have intended to punish only O'Brien's attorney and not O'Brien, he acted intentionally and in bad faith. (*Gonzalez, supra,* 33 Cal.3d at p. 372 [attorneys on three occasions entered judge's courtroom and found proceedings had begun without them; court found judge's action constituted wilful misconduct].) We thus conclude that the judge's action in the O'Brien case constituted wilful misconduct.

### COUNT 4—THE ROBERTS MATTER

Count 4 alleges that the judge violated Rose Roberts's right to representation by ordering her trial to proceed even though her attorney of record was not present. Roberts was charged with driving while under the influence of alcohol. (Veh. Code, § 23152, subd. (a).) On the day before her scheduled trial in San Benito County, her attorney was involved in a trial in another county; when he realized that the trial would not end that day, he telephoned Judge McCullough's chambers to request a continuance of Roberts's case. A clerk informed him of the court's 48-hour written notice requirement. The attorney then contacted the district attorney, who told him that he did not object to the trial being continued. He thus arranged for a local attorney to make a special appearance at Roberts's trial and request a continuance.

The local attorney personally appeared in court along with Roberts and made the request. Judge McCullough denied the request and ordered the trial to proceed—even after the local attorney indicated that he would not represent Roberts at trial. Roberts broke into tears in response to the judge's insistence on proceeding to trial without her attorney of record, as she was unprepared to represent herself. She understandably did not call witnesses, cross-examine the prosecution's witnesses, or herself take the stand. She was convicted of the charge. When her attorney learned that the trial had proceeded without him, he moved for a new trial, which Judge McCullough denied.

Again, Judge McCullough claims that he simply followed the 48-hour requirement of section 1050, subdivision (b) of the Penal Code. He again ignores the hearing requirement of subdivision (d) and the availability of sanctions for noncompliance under subdivision (c). As occurred in the O'Brien matter, Judge McCullough allowed his impatience with a defendant's attorney to outweigh a defendant's right to a fair trial and representation of her choice. Moreover, we are concerned that the judge's rulings in the O'Brien and Roberts matters may have been the product of the friction he alleged existed between him and the district attorney's office rather than from his desire to maintain the court's calendar. (See *infra*, p. 198.) We

conclude that his actions in the Roberts case also constituted wilful misconduct.

## COUNT 5

We do not consider charges of misconduct that the Commission has dismissed. (*Spruance, supra,* 13 Cal.3d at pp. 784-785, fn. 5.)

## COUNT 6—THE BRASHEAR MATTER

■  Count 6 alleges that the judge failed to perform his judicial duties by not disposing of a matter pending before him for over six years. Kathy Brashear was the codefendant and cross-complainant in the case of Oakley v. Cheadle. On February 2, 1982, Judge McCullough granted her motions for judgment against plaintiffs and cross-defendants.[8] A week later, Brashear's attorney sent the court a proposed judgment and request for costs and attorney's fees. Despite numerous telephone calls, written requests and trips to the court by Brashear's attorney over the next three years, Judge McCullough neither signed the judgment nor ruled on the request for costs and fees. The Commission eventually brought charges against the judge for his delay in this and other cases, and we publicly censured him in April 1987, finding that he had committed persistent failure and prejudicial conduct. (*In re McCullough, supra,* 43 Cal.3d at p. 535.)

We are especially concerned with the judge's failure to act on the Brashear matter even after public censure. Instead of signing the judgment after his censure, the judge cavalierly told his clerk that he wanted nothing more to do with the case. Not until March 1988, after the Commission had instituted the present proceedings and more than six years after he actually granted the motions, did he sign the judgment.

Judge McCullough offers the same argument in his defense that he made before us two years ago: Section 71610 of the Government Code, which compels a judge to act on a matter within 90 days of it submission, did not require him to sign the proposed judgment or rule on costs and fees because the motion was made and decided "in court." A judge must issue a written judgment, however, to give his oral decision legal force. (Code Civ. Proc., § 632; rule 520.) We conclude that Judge McCullough's failure to sign the judgment form constituted persistent failure.

---

[8] The case proceeded as to the remaining parties; they submitted posttrial briefs on February 16, 1982. Judge McCullough finally entered a decision in the underlying dispute in October 1985.

## SPECIAL DEFENSES

Judge McCullough asserts that the Commission violated his right to confidentiality by improperly disclosing information regarding the charges against him. (Rule 902.) ▮ He claims that the presence of a prosecutor in the courtroom when the Commission served him with its notice of formal proceedings, and the appearance of a newspaper article about the proceedings on the following day, support his contention that the Commission improperly disclosed confidential information to the district attorney's office and the local media. The mere presence of a prosecutor and appearance of a news article, however, do not, by themselves, support an argument that the Commission violated the rules of confidentiality. Moreover, the Commission is authorized to issue announcements "confirming the hearing, clarifying the procedural aspects, and defending the right of a judge to a fair hearing" whenever it has instituted formal proceedings in a matter "in which the subject matter is generally known to the public and in which there is broad public interest, and in which confidence in the administration of justice is threatened due to lack of information concerning the status of the proceeding and requirements of due process . . . ." (Rule 902(b)(3); *Gubler* v. *Commission on Judicial Performance* (1984) 37 Cal.3d 27, 61 [207 Cal.Rptr. 171, 688 P.2d 551].)[9]

Also, the judge alludes throughout his petition to animosity toward him on the part of the district attorney's office.[10] Judge McCullough suggests that the district attorney's office was out to "get him." The Commission noted that the relationship between the district attorney and Judge McCullough was "far from harmonious." We agree with the Commission's conclusion, however, that the only relevance to the current proceedings of any acrimony in their relationship is its effect on the credibility of the witnesses at the hearing. In this regard, the special masters stood in the best position to judge the credibility of the witnesses at the hearing; we thus assume that they considered the trustworthiness of the testimony in formulating their factual findings.

## MITIGATING CIRCUMSTANCES

The Commission found that Judge McCullough is a hardworking judge who has critics but also friends in the community. Several parties testified to the judge's good character, and the San Benito County Bar Association filed

---

[9] We emphasize, however, that we have no evidence before us that the Commission actually submitted any material to the local media.

[10] We consider this contention here even though the judge does not specifically label it a "Special Defense."

an amicus curiae brief on his behalf. In addition, we take notice that the voters of San Benito County have twice elected him to judicial office.

## DISPOSITION

■ We conclude that Judge McCullough has committed four acts of wilful misconduct and one act of persistent failure. He deprived criminal defendants of their constitutional rights, used his office to benefit a personal friend, and failed to perform the most basic of judicial duties. Ten years' experience as the District Attorney of San Benito County certainly acquainted him with the rules of court and criminal procedure. (*Wenger* v. *Commission on Judicial Performance* (1981) 29 Cal.3d 615, 653-654 [175 Cal.Rptr. 420, 630 P.2d 954].) Moreover, his failure to respond to our public censure evidences a lack of regard for the Commission, this court and his obligations as a judge.

"The purpose of these proceedings is not to punish errant judges but to protect the judicial system and those subject to the awesome power that judges wield." (*Furey, supra,* 43 Cal.3d at p. 1320.) We conclude that that purpose is best served by adopting the recommendation of the Commission that Judge McCullough be removed from office.

We order that Judge Bernard P. McCullough, justice court judge of the San Benito Judicial District, San Benito County, be removed from office. He shall, however, if otherwise qualified, be permitted to resume the practice of law (Cal. Const., art. VI, § 18, subd. (d)) on the condition that he pass the Professional Responsibility Examination. He had a long career in private and public practice before coming onto the bench, and several parties have testified to his good character. Moreover, as an attorney, he will not have access to the power that he abused as a judge. (*Spruance, supra,* 13 Cal.3d at p. 803.) This order is effective upon the finality of this decision in this court.