[No. B117061. Second Dist., Div. Five. Aug. 9, 1999.]

JOSEPH A. SAUNDERS, P.C., et al., Plaintiffs and Appellants, v. WEISSBURG & ARONSON et al., Defendants and Respondents.

COUNSEL

Groh, Carroll, Stern & Werner and David B. Carroll for Plaintiffs and Appellants.

Jeffer, Mangels, Butler & Marmaro, Marc Marmaro and Stanley M. Gibson for Defendants and Respondents.

OPINION

ARMSTRONG, J.—Plaintiffs Joseph A. Saunders and Joseph A. Saunders, P.C. (Saunders) appeal the judgment entered following the grant of summary judgment in favor of Weissburg & Aronson (Weissburg), County of Los Angeles (County), and two hospitals. We affirm the judgment.

FACTS

Pursuant to a written agreement, Saunders and Weissburg jointly represented a large group of hospitals in contingency fee litigation against the

Medicare program. That litigation is referred to by the parties as "the Group Appeal." The Group Appeal was ultimately settled by the unanimous vote of its nine member hospitals for $8 million. Saunders was paid both the contingency fee and a consulting fee contemplated in the agreement with Weissburg.

Saunders alleged that Weissburg made certain misrepresentations to Saunders and the Group Appeal members which affected their assessment of the settlement offer that the hospitals ultimately accepted. Specifically, Saunders contended that Weissburg manipulated the course of the litigation to obtain a greater recovery for the individual defendant hospitals and the hospitals owned by the County, to the detriment of the remaining hospital members of the Group Appeal. Because the hospitals allegedly favored by Weissburg were not subject to the contingency fee agreement between Saunders and Weissburg, this manipulation resulted in a greater fee recovery by Weissburg, at Saunders's expense.

The complaint alleged causes of action against Weissburg for breach of contract, breach of fiduciary duty, constructive fraud, fraudulent concealment, interference with the practice of a profession, defamation, negligence, and conversion, all premised on Saunders's argument that he was injured when, as a result of Weissburg's prevarications, the Group Appeal was settled for less than its true value.[1] Saunders claimed as damages the contingency fee he would have received if the Group Appeal had not been settled for less than it was worth.

### DISCUSSION

■ Each of Saunders's causes of action is based on the premise that Weissburg breached certain duties owed to cocounsel Saunders pursuant to a joint venture agreement between them, by misusing and mishandling a contingency fee case. The Court of Appeal considered one lawyer's duties to successor counsel in *Mason* v. *Levy & Van Bourg* (1978) 77 Cal.App.3d 60 [143 Cal.Rptr. 389]. In that case, the defendants were substituted in the place of the plaintiff as attorney of record for the client in two pending lawsuits. Pursuant to a written contract, the plaintiff was to receive a percentage of the 50 percent contingency fee which the client had agreed to pay. Although offers of settlement approximating $300,000 were made by opposing counsel

---

[1]The complaint also alleged causes of action against the County, which owned six of the Group Appeal hospitals, as well as the two individual hospital defendants, for conversion, civil conspiracy, unjust enrichment, and interference with Saunders's business interests. In his opening brief, Saunders advances no argument and cites no authority with respect to his claims against defendant County of Los Angeles and the two individual hospital defendants. Consequently, we deem the issues waived as to these defendants.

in the cases, the defendants failed either to settle the cases or to prosecute them diligently, resulting in the loss of plaintiff's portion of the contingency fee.

The Court of Appeal rejected the notion that the defendant attorneys owed a duty to the plaintiff under the facts of that case. The court stated: "It is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his clients. (See ABA Code of Prof. Responsibility, canon 5.) This loyalty should not be diluted by a duty owed to some other person, such as an earlier attorney. While, as a practical matter, both the client and the former attorney stand to benefit from any recovery in the client's action, their interests are not identical. . . . It would be inconsistent with an attorney's duty to exercise independent professional judgment on behalf of his client to impose upon him an obligation to take into account the interests of predecessor attorneys." (*Mason* v. *Levy & Van Bourg, supra*, 77 Cal.App.3d at pp. 66-67.)

The appellate court considered the ramifications of recognizing a legally cognizable duty on the part of one attorney to another attorney representing the same client: "If the law were to recognize duties, such as are suggested here, between successive attorneys representing the same client, a multitude of litigation could be spawned with an attendant adverse impact on attorney-client relationships. Every lawyer could blame his problems in a lawsuit on his predecessors. Every lawyer referring a case to another lawyer would be in a position to claim that the negligence of the second lawyer caused a meritorious claim to be lost or settled for an insufficient amount. Public confidence in the legal system may be eroded by the spectacle of lawyers squabbling over the could-have-beens of a concluded lawsuit, even when the client has indicated no dissatisfaction with the outcome. Considerations of public policy support the conclusion that an attorney's duty of undivided loyalty to his client should not be diluted by imposing upon him obligations to the client's former attorney, or at least obligations greater than the client himself owed to the former attorney. [¶] . . . And the contract between the two attorneys, whatever other obligations it may impose, cannot legally impose upon the successor attorney a duty to pursue the client's case according to the former attorney's interests." (*Mason* v. *Levy & Van Bourg, supra*, 77 Cal.App.3d at p. 67, fn. omitted.)

The *Mason* court concluded that "defendants owed no duty to plaintiff to prosecute the case in any particular manner; the duties in this regard are owed to the client." (77 Cal.App.3d at p. 67.)

Another Court of Appeal considered a lawyer's duty to concurrent, as opposed to successor, counsel in *Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931

[175 Cal.Rptr. 81]. There, the plaintiff served as counsel to his client in a medical malpractice lawsuit; the plaintiff was to be paid 50 percent of any recovery realized by the client. Relying on false representations of the defendant, the plaintiff associated the defendant as trial counsel, and agreed that he would receive one-third of the plaintiff's contingent fee. Unbeknownst to the plaintiff, the defendant did not properly prepare the case for trial. A $250,000 pretrial settlement offer was rejected. Due to the defendant's conduct, the jury returned a defense verdict in the medical malpractice action. Not only did the defendant lose the underlying case, but he induced the client to sue the plaintiff for legal malpractice.

The plaintiff sued the defendant for breach of fiduciary duty, fraud, breach of contract, legal malpractice, and declaratory relief. The Court of Appeal, over a dissent, reversed the trial court's sustaining of a demurrer, ruling that simple agency principles govern the relationship of associate counsel. (*Pollack* v. *Lytle, supra*, 120 Cal.App.3d at pp. 940-943.) The majority did not disagree with the rationale of *Mason*. It stated: "We are not unmindful of the growing body of law which holds, as a matter of public policy, that a successor attorney owes no duty to his predecessor. (See, e.g., *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347 [156 Cal.Rptr. 326]; *Rowell* v. *TransPacific Life Ins. Co.* (1979) 94 Cal.App.3d 818 [156 Cal.Rptr. 679]; *Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934 [155 Cal.Rptr. 393]; *Held* v. *Arant* (1977) 67 Cal.App.3d 748 [134 Cal.Rptr. 422].)" (*Pollack* v. *Lytle, supra*, 120 Cal.App.3d at p. 942.) Rather, the majority found the policy rationale of *Mason* inapplicable to the situation of associate counsel. It reasoned: "The roles of successor and associate attorneys are decidedly different. In the fulfillment of his duty of undivided loyalty to the client, a successor attorney must view the client's situation as of the moment when he is engaged. Hence public policy requires that he not be subjected to any possible conflict of interest which may deter him from determining the best interests of the client by the possibility that he may be held liable for his acts by his predecessor. (See *Gibson, Dunn & Crutcher* v. *Superior Court, supra*, 94 Cal.App.3d 347, 356.) In contrast, an associate attorney acting as the agent of the principal attorney replaces no one, but acts at the behest of his principal." (*Ibid.*)

With all due respect to the majority in *Pollack*, we do not find this analysis persuasive. The duty of both the associate and successor attorney is the same: to serve the best interests of the client. Justice Johnson, dissenting in *Pollack* stated, "There is a substantial body of law concerning the liability of attorneys who sue each other in connection with common clients. A fiduciary relationship has not heretofore been recognized, and, regardless of legal theory asserted, there has emerged a recurring theme; a client's right to

the undivided loyalty of his or her attorneys must be protected, even when the result of such rule is the denial of an attorney's cause of action against another attorney." (*Pollack* v. *Lytle, supra,* 120 Cal.App.3d at p. 945 (dis. opn. of Johnson, J.).) As Justice Johnson observed, "In terms of *Mason's* public policy rationale, I see no logical distinction that should be based on litigants' status as cocounsel as opposed to successor counsel. . . . [T]he *Mason* court relied heavily on the premise that the practice of law remains a profession rather than a business, and that the client's interests must be protected from even the possibility of less than total devotion to his interests by the attorney of his choice." (*Pollack* v. *Lytle, supra,* 120 Cal.App.3d at p. 947, fn. omitted (dis. opn. of Johnson, J.).)

We find the dissent's position the more soundly reasoned. As both Justice Johnson and the *Mason* court observed, recognizing a duty on the part of cocounsel as urged by Saunders would be inconsistent with counsel's duty to exercise independent judgment on behalf of the client. Saunders argues that here, Weissburg's duty to its clients was precisely the same as its duty to cocounsel, so that Weissburg was faced with no conflict. Yet the record indicates that the clients were satisfied with Weissburg's representation, while Saunders was not. That surely indicates that recognition of a duty on the part of Weissburg to its cocounsel potentially conflicts with Weissburg's duty to its clients of undivided loyalty and total devotion to their interests. Indeed, the *Mason* court envisioned just this situation in observing that "Public confidence in the legal system may be eroded by the spectacle of lawyers squabbling over the could-have-beens of a concluded lawsuit, even when the client has indicated no dissatisfaction with the outcome." (*Mason* v. *Levy & Van Bourg, supra,* 77 Cal.App.3d at p. 67.)

As Justice Johnson wrote in dissent in *Pollack* v. *Lytle, supra,* 120 Cal.App.3d 931, "To affirm the sustaining of a demurrer without leave to amend due to plaintiff's inability to properly allege either damages or a fiduciary duty may seem to impose a harsh burden on a wronged attorney. However, in balancing the interests of attorneys in protecting their fees and the public policy of protecting clients' rights to receive the undivided loyalty of all counsel who represent them, the wiser course is to reject the recognition of a fiduciary duty between cocounsel." (*Id.* at p. 949 (dis. opn. of Johnson, J.).) We concur in this reasoning, and accordingly affirm the entry of summary judgment.

Finally, Saunders maintains that, even if Weissburg did not breach a common law duty owed to Saunders as cocounsel, and did not breach the joint venture agreement between the parties, Weissburg defamed Saunders when, "in approximately mid-1992 and at various times thereafter, [Weissburg] stated either orally, in writing, or both to the Group Appeal clients that

Saunders'[s] opinions and judgment with respect to the Medicare offer(s) were unreliable, uninformed, and unworthy of consideration." ■ The foregoing statements, made in the course of settlement negotiations, were absolutely privileged pursuant to Civil Code section 47, subdivision (b). (See, e.g., *Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 215 [266 Cal.Rptr. 638, 786 P.2d 365] ["To effectuate its vital purposes, the litigation privilege is held to be absolute in nature."]; *Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 99 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152], cited and quoted with approval in *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1165 [232 Cal.Rptr. 567, 728 P.2d 1202]; and *Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 214 ["[I]t is desirable to create an absolute privilege in defamation, not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with libel or slander actions while acting for his client, . . ."].) Consequently, summary judgment was properly entered with respect to Saunders's cause of action for defamation.

### DISPOSITION

The judgment is affirmed.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied September 8, 1999, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 10, 1999.