[No. E023862. Fourth Dist., Div. Two. July 20, 2000.]

YVONNE L. STREIT, Plaintiff and Appellant, v.
COVINGTON & CROWE et al., Defendants and Respondents.

COUNSEL

Law Offices of Chen & Haggerty and Edward J. Haggerty for Plaintiff and Appellant.

Covington & Crowe, Robert E. Dougherty and Tracy L. Tibbals for Defendants and Respondents.

OPINION

**McKINSTER, Acting, P. J.**—

*Procedural Background*

Yvonne L. Streit sued Weldon Diggs, his professional corporation, Linda Wilde, and Deborah Walker (Diggs defendants), together with numerous fictitiously named defendants, for damages for legal malpractice. Framed in three counts, her complaint alleges that the defendants committed malpractice in defending her in two actions and in prosecuting a cross-complaint in one of them. All three counts are asserted against every defendant, including every Doe defendant. Thereafter, Streit amended her complaint to substitute Covington & Crowe, a law firm, and Gerald R. Gatlin, a lawyer who had practiced at that firm, for two of the Doe defendants.

The Diggs defendants moved for summary adjudication as to the first and third counts of the complaint. Covington & Crowe and Gatlin (collectively, Covington & Crowe) joined in the motion for summary adjudication on the same grounds raised by the Diggs defendants. Covington & Crowe represented that their only connection to Streit's representation was that, as a professional courtesy to Streit's attorneys of record, the Diggs defendants, Covington & Crowe had "specially appeared" for Streit in their stead at a hearing on a motion for summary judgment.

The trial court denied the motion as to the Diggs defendants, finding that disputed issues of material fact existed. But it granted summary judgment to Covington & Crowe, explaining: "There is no evidence in support of plaintiff's contention that special appearance at the motion for summary judgment constitutes a representation of plaintiff on all of the issues contained in the motion raised at the hearing. . . . The evidence appears to be uncontradicted that Covington & Crow [*sic*] was not associated as counsel for plaintiff, did not participate in any advice or recommendations to plaintiff, and appeared at the hearing on the motion for summary judgment solely as an accommodation to the Diggs defendants."

After the action against the Diggs defendants was settled and dismissed, the trial court entered judgment in favor of Covington & Crowe. Streit appeals. We reverse.

### *An Attorney Specially Appearing for a Litigant Instead of the Litigant's Attorney of Record Owes a Duty of Care to That Litigant.*

Streit contends that summary judgment was both procedurally and substantively improper. However, because we find that the trial court erred as a matter of substantive law, we need not resolve the procedural issues.[1]

The substantive issue raised by Streit is this: When an attorney makes what is commonly referred to as a "special appearance" for a litigant instead of the litigant's attorney of record, does the specially appearing attorney owe a duty of care to the litigant?[2] Covington & Crowe contends that no attorney-client relationship arises in that situation. As noted above, the trial court agreed. We do not.

"One of the requisite elements of a legal malpractice claim is the existence of an attorney-client relationship or other basis for a duty of care owed by the attorney." (*Jager v. County of Alameda* (1992) 8 Cal.App.4th 294, 297 [10 Cal.Rptr.2d 293].) When the evidence is undisputed, the question of whether an attorney-client relationship exists is one of law. (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1733 [20 Cal.Rptr.2d 756].)

Although the relationship usually arises from an express contract between the attorney and the client, it may also arise by implication. (1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 68, p. 101; 3 Levy et al., Cal. Torts (1999) Attorneys, § 32.02[1], pp. 32-7 to 32-8; 1 Mallen & Smith, Legal Malpractice (4th ed. 1996) § 8.3, p. 568.) " 'Neither contractual formality nor compensation nor expectation of compensation is required.' " (*Miller v. Metzinger* (1979) 91 Cal.App.3d 31, 40 [154 Cal.Rptr. 22], quoting from

---

[1]Even had we decided the procedural issues, we still would have been required to reach the substantive issue because it inevitably would have arisen again in the trial court. (Code Civ. Proc., § 43.)

[2]Technically, "special appearance" means an appearance for the limited purpose of challenging an assertion of personal jurisdiction over a party. (2 Witkin, Cal. Procedure (4th ed. 1997) Jurisdiction, § 197 et seq., p. 763.) But we employ it here in its less formal but perhaps more common usage to denote an appearance at a hearing by one attorney at the request and in the place of the attorney of record, whether with or without compensation. (See, e.g., *McCullough v. Commission on Judicial Performance* (1989) 49 Cal.3d 186, 195-196 [260 Cal.Rptr. 557, 776 P.2d 259]; *Vernon v. Great Western Bank* (1996) 51 Cal.App.4th 1007, 1010 [59 Cal.Rptr.2d 350]; *County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 781-782 [140 Cal.Rptr. 383].)

*Tormo v. Yormark* (D.N.J. 1975) 398 F.Supp. 1159, 1169; accord, *Lister v. State Bar* (1990) 51 Cal.3d 1117, 1126 [275 Cal.Rptr. 802, 800 P.2d 1232].)

The relationship may arise without any direct dealings between the client and the attorney. For instance, by retaining a single attorney, a client establishes an attorney-client relationship with any attorney who is a partner of or is employed by the retained attorney. (*Little v. Caldwell* (1894) 101 Cal. 553, 559 [36 P. 107] [partner]; *Raskin v. Superior Court* (1934) 138 Cal.App. 668, 670 [33 P.2d 35] [employee's authority to represent client]; 1 Witkin, Cal. Procedure, *supra*, § 70, p. 103; 1 Mallen & Smith, Legal Malpractice, *supra*, § 5.3, p. 338 [partner].) "The relationship also arises from a simple *association* for a particular case." (1 Witkin, *supra*, § 71, p. 103; and see *Wells Fargo & Co. v. City etc. of S. F.* (1944) 25 Cal.2d 37, 43 [152 P.2d 625] [noting that an associated attorney and an attorney of record share the duty of representation]; *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] [reversing summary judgment in favor of associated attorneys and thereby suggesting that associated attorneys have a duty to client]; *Joseph A. Saunders, P.C. v. Weissburg & Aronson* (1999) 74 Cal.App.4th 869, 873 [87 Cal.Rptr.2d 405] [associated attorney owes duty to client]; 3 Levy et al., Cal. Torts, *supra*, § 32.04[3][b][ii], p. 32-29 [original attorney and associated attorney are jointly liable to client for any wrongful conduct by associated attorney].)

█ Covington & Crowe would have us draw a distinction between an association for an entire case and an association for the purpose of the hearing of a single motion, and hold that there is an attorney-client relationship in the former but not in the latter. In particular, it would have us find that a "special appearance" is not, in substance, an association of counsel.

Contrary to Covington & Crowe's assertion, an attorney making a special appearance is associated with the party's attorney of record. Indeed, if that were not the case, the specially appearing attorney would not be allowed to be heard. When a party is represented by an attorney of record, no other attorney has authority to appear on the party's behalf unless the attorney making the appearance is associated with the attorney of record. (*In re Marriage of Park* (1980) 27 Cal.3d 337, 343 [165 Cal.Rptr. 792, 612 P.2d 882].)

That the association is limited to a single appearance is a distinction only of degree, not of kind. In any association, the lead attorney and the associated attorney must "divide the duties concerning the conduct of the cause." (*Wells Fargo & Co. v. City etc. of S. F.*, *supra*, 25 Cal.2d at p. 43; *Youngworth v. Stark* (1991) 232 Cal.App.3d 395, 407 [283 Cal.Rptr. 668].) The

responsibility for performing the bulk of those duties may be given to the associated counsel, or may be retained by the lead counsel. In the case of a one-time appearance, the duties assigned to the associated counsel are limited in time and scope. But whatever the allocation between them, both attorneys have an attorney-client relationship with the litigant they represent until that association is terminated.

Recognizing that an attorney making a special appearance is representing a client is consistent with the rule that the act of making a court appearance on behalf of a party creates a presumption that the attorney is authorized to do so, and hence is strongly presumptive of an attorney-client relationship. (*Clark Equipment Co. v. Wheat* (1979) 92 Cal.App.3d 503, 523 [154 Cal.Rptr. 874].) It is also consistent with common sense. By appearing at a hearing in a case in which the attorney has no personal interest, the attorney is obviously representing the interests of someone else, someone who is a party to that action. The client is such a person; the client's attorney of record is not. We conclude that an attorney making a special appearance is representing the client's interests and has a professional attorney-client relationship with the client.

Covington & Crowe contends that this conclusion is contrary to principles of agency law. In particular, it argues that the specially appearing attorney is merely the agent of the attorney of record, not the agent of the client.

That contention is doubtful,[3] but we need not decide it. ■ Although an attorney is generally said to be an agent of the client, agency principles are used primarily to indicate the nature and extent of the attorney's authority. (1 Witkin, Cal. Procedure, *supra*, Attorneys, §§ 261-262, pp. 326-328.) Agency principles are not controlling when determining the existence and scope of an attorney's duties. (*Id.*, § 262, p. 327.)

■ An attorney owes a professional duty of care to every person with whom that attorney has an attorney-client relationship. Whether the attorney

---

[3]If an agent is authorized by the principal to employ a subagent, the subagent owes the same duties to the principal as does the agent. (Civ. Code, § 2351; accord, Rest.2d Agency, § 428.) An agent may employ and delegate duties to a subagent "[w]hen it is the usage of the place to delegate such powers . . . ." (Civ. Code, § 2349, subd. 3.) The courts long ago took judicial notice that in California it is the custom for attorneys or firms to hire attorneys as employees to assist in performing legal work for which the employing attorney or firm has been retained. (*Raskin v. Superior Court, supra*, 138 Cal.App. at p. 670.) We could just as confidently take judicial notice that it is also the custom in California for attorneys of record to associate independent attorneys or firms to assist in that representation. Although the client is not liable for the expense of the associated counsel absent an express agreement (*Porter v. Elizalde* (1899) 125 Cal. 204, 207 [57 P. 899]; *Johnson v. California I. M. T. Assn.* (1938) 24 Cal.App.2d 322, 335 [74 P.2d 1073]), it appears that the attorney of record is authorized to delegate work to associated counsel if it is not at the client's expense (1 Witkin, Cal. Procedure, *supra*, Attorneys, § 190, p. 247).

was selected directly by the client or associated by the attorney of record, that relationship exists. "[T]he principal attorney and the associate attorney each owes the same duty of loyalty to the client . . . ." (*Pollack v. Lytle* (1981) 120 Cal.App.3d 931, 942 [175 Cal.Rptr. 81].) Nor does it make any difference that the associated attorney is being compensated by the attorney of record rather than the client, or is not being compensated monetarily at all. Just as a defense attorney selected and compensated by an insurer nevertheless represents an insured client and owes that client a duty of care (*Bogard v. Employers Casualty Co.* (1985) 164 Cal.App.3d 602, 609 [210 Cal.Rptr. 578]), the associated attorney represents the client and owes a duty of professional care to the client.

To summarize, we hold that, by agreeing to "specially appear" in the place of Streit's attorneys of record, Covington & Crowe undertook a limited association with that firm for the purpose of representing Streit at the hearing on the motion for summary judgment. Covington & Crowe thereby entered into an attorney-client relationship with Streit pursuant to which Covington & Crowe owed Streit a duty of care. The trial court erred by concluding otherwise.

Our conclusion that Covington & Crowe owed a duty to Streit does not resolve the entire issue raised below. Still to be decided is the precise scope of that duty. (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 1998) ¶ 3:76, p. 3-20; 1 Mallen & Smith, Legal Malpractice, *supra*, § 8.2, p. 556.) But in the absence of an adequate showing of undisputed facts concerning the details of the engagement of Covington & Crowe by the Diggs defendants and the nature of the instructions they gave to Covington & Crowe, we must leave it to the trial court to resolve that additional issue.

DISPOSITION

The judgment is reversed. The trial court is directed to vacate the order granting summary judgment in favor of Covington & Crowe and Gatlin and to enter a new order denying their motion for summary adjudication. Streit shall recover her costs on appeal.

Richli J., concurred.

**WARD, J.,** Concurring.—I agree with the ruling and the logic of the majority opinion. Because our holding is likely to cause substantial concern in the legal community, I offer additional observations. It was not necessary to articulate theoretical underpinnings of our result in order to reach a legal

conclusion, but implicit in our decision are a number of assumptions about the practice of law and about the function of attorneys who appear in court, which deserve articulation.

A basic element of our legal system is, obviously, the lawyer. What is a "lawyer"? In its common and most expansive sense, the word refers to a person who is learned in the law. In this sense, it may include many categories of lawyer with which we are not concerned here: e.g., those in judicial and quasi-judicial positions, scholars, lawyers in academia, and those who lecture, teach or write. The issue before us today concerns a narrower category of lawyers: those who represent a client.

In order to represent another, a lawyer must be admitted to practice law. Those who represent clients are divided into two broad groups; those who go to court and those who ply their trade without going to court. Our decision today focuses solely upon the lawyers who go to court on behalf of clients. The lawyer who represents clients in court may be better described as an "attorney-at-law," or an "attorney" because these terms refer to the representation or agency relationship. Although we deal here only with questions concerning the duties of attorneys who go to court on behalf of clients, we operate within a system where there is no official distinction between "attorneys" who go to court, and those who do not. Any attorney, indeed, any lawyer admitted to practice is permitted go to court on behalf of a client.

The right to practice law is bestowed by courts. Being admitted to practice law in a certain jurisdiction does not impose much of a limitation, geographical or otherwise, on the practice of law. After passing the bar examination and being admitted into practice, a lawyer can go virtually anywhere to practice his or her profession. For the most part, it is not difficult to gain admission to practice in additional jurisdictions. Unflattering though it may be, the truth is that lawyers in the American system are officially fungible. Grab a person with a bar card and you can plug that person into any court.

This tradition developed when the number of lawyers in this country was small and the practice of law was elemental. A lawyer tucked his (in those days, women were not allowed to practice law) volume of Blackstone's Commentaries under his arm and marched into court. We have essentially the same system today, but we now number lawyers in the hundreds of thousands and the world of the law is infinitely more complex. Our mode of practice is still based upon the now-dubious premise that, once a person is admitted to practice law, he or she is qualified to go into any court and represent a client's interest. The system assumes that, e.g., the tax lawyer who does not even know the way to the courthouse can instantly become a trial attorney and defend a person on trial for his life.

Lawyers are sometimes informally categorized by a task performed: tax lawyer, real estate lawyer, divorce lawyer, or criminal defense lawyer to name a few. These categories are ill-defined and they mean different things to different people. With limited exceptions, such as the specialization program of the State Bar, there are no standards to meet in order to practice a given task. In this case, we encounter one of the vaguest categories, that of trial lawyer or trial attorney. (Once again, because going to court on a client's behalf necessarily involves representation and agency, the term trial attorney seems more precise.) This designation can be achieved through years of professional endeavor, but it is often acquired simply by self-proclamation. What does it take to be a trial attorney? None of us knows precisely. Paradoxically, perhaps all of us know generally. Whatever the perception, the attorney who wishes to appear in court can do so with absolutely no special qualifications or talents.

We do not, and cannot, with this opinion, do anything to change this basic state of legal practice. I simply make these observations for the purpose of setting the stage for considering the responsibilities which devolve to attorneys when making appearances in court.

On any given day, a judge in California may see dozens of attorneys, many of whom are unknown to the judge. The attorneys routinely announce that they represent the interests of persons who have come before the court. (It is worth noting that, for the most part, the people who are before the court are there involuntarily. Those who would rather not be there outnumber those who have chosen to appear there.) In California the attorney could be any one of approximately 150,000 lawyers who have the right to make such an appearance. The number grows enormously if we add lawyers who are admitted to practice elsewhere but who, through motion to the court, have applied to practice in this state. Courts seldom, if ever, inquire whether the attorney is actually qualified for the particular kind of representation which he or she is about to undertake. Only rarely does the judge confirm that the attorney actually represents the client and never does the judge ask if the attorney is prepared to be held responsible for his or her actions in connection with that representation.

The responsibility of these attorneys for their actions is, however, the heart of the case before us today. In our fluid and vaguely structured system, how do we protect the clients being served by our profession? How do we assure the public that the attorneys they choose are qualified for the task at hand? For the most part we are passive in this regard. We trust that an educational system, a bar examination process and continuing legal education will produce qualified people. But we do not otherwise make special

demands or set special requirements for those who represent clients in court. Ultimately, we rely on the court system to protect the public after the fact: we allow clients to sue attorneys for negligent performance, and we have a discipline system to take action against attorneys who violate the rules of professional conduct. But these remedies may prove wholly inadequate, and do not protect clients from harm in the first instance.

In the case at hand, defendant attorneys question whether the representation of the client by the attorney ever commenced. When an attorney makes a so-called special appearance for the attorney of record, has the relationship of attorney and client even been formed between the client and the "specially appearing" attorney?[1] The majority opinion has adequately answered that question in the affirmative, and I wholeheartedly agree. In my view, our system provides too little protection for the public as it is, without adding uncertainty concerning the nature of the representation in the first instance. If we were to accept defendant attorneys' argument that no attorney-client relationship arose, there would be even less protection for clients than the system provides now. This would be a step in the wrong direction. I believe that our system of legal representations is better served by a bright-line rule: when an attorney stands before the court and announces ready for Jones, the world can count on it—that attorney represents Jones, and that attorney will be held responsible if he or she commits malpractice or violates rules of professional conduct.

Defendant attorneys argue that there is a great need for a sort of limited representation by attorneys when they are only appearing for other attorneys as a courtesy, or only briefly on a case with which they are unfamiliar, most often on a perfunctory matter. With a court system as huge as ours, with branch courts spread across the state and multiple appearances being required in connection with litigation, this is a matter of great concern. I have sympathy for attorneys who work by themselves or work out of small firms where they have difficulty in attending numerous court appearances. I am well aware of the practice of sending a friend (or a hired stranger, for that matter) in another town to cover a perfunctory court appearance.

The plea to this court is to allow a limited kind of representation, with concomitant limited responsibility, because of the logistic demands on the

---

[1]Defendant attorneys have used the phrase "special appearance," but this is a misnomer. The phrase is appropriately used to characterize the function of an attorney who appears for the limited purpose of asserting an objection to the jurisdiction of the court. Such a limited appearance has long been permitted by law. No particular statement is required on the part of the attorney when appearing specially, so long as the intent to contest the court's jurisdiction is clear. (*In re Clarke* (1899) 125 Cal. 388, 392 [58 P. 22]; see generally 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 197 et seq., p. 263.)

legal profession. To put it bluntly, we are being asked to balance the rights of clients to sue attorneys against the attorneys' convenience. In this balancing, I believe that we are required to adhere to the high standards of our profession—we must, as always, put the interests of the clients first. We are told that, if our opinion stands, attorneys will be reluctant to appear as an accommodation to other attorneys, the attorneys' work will become more difficult, and the rule we announce will impede the orderly process of the court. I disagree. Our decision need not result in such assertedly catastrophic consequences. There are other ways to resolve the difficulties defendant attorneys prophesize.

Preliminarily, what is the nature of the court appearances we are concerned with here? Defendant attorneys speak of "perfunctory" appearances. What does that mean? On an extreme end of the spectrum, we can envision a court appearance which requires no particular knowledge of the case and requires only that some person attend, for example, to set a trial date. I feel constrained to point out that something must be seriously wrong with our system if we require attorneys, at substantial hourly rates, to actually appear in court, when any warm body would do just as well. Perhaps the trial courts should reevaluate the need for some court appearances that are currently required. For years, the profession has debated the possibility of relieving attorneys from the obligation of physical attendance at the courthouse for routine transactions. Perhaps through the use of technology, attorneys will be able to meet court requirements, e.g., via telephonic or other electronic means of communication.

On the other hand, the business under consideration may genuinely require the attorneys to be physically present, that is, when some meaningful exchange can be anticipated. If personal presence is imperative, then certainly it shortchanges the client to have an attorney appear who is not fully able to represent the client's interests. A major drawback of defendant attorneys' proposal for "limited liability" representation on "perfunctory" matters, is that we do not know when the "no-brainer" appearance will suddenly transform into the crucial turning point of the case. Consider the situation where the accommodating attorney goes to court to arrange for a continuance of the trial, only to be told by the judge to call his or her first witness.

Defendant attorneys' proposed limited liability appearance not only diminishes the rights of clients, it also tramples on the court's right and duty to control the proceedings. Consider the judge who tries to solve some pressing problem in the case by seeking a stipulation from counsel, only to be told that an appearing attorney has only limited authority or inadequate knowledge of the matter. If we must choose between a process which encourages

inadequate preparation or a process which demands competent performance, there is no real choice—our professional duty demands excellence. I am reminded of my father's constant repetition of the old saw, "if a job is worth doing, it is worth doing well." In the case of the sacred trust between attorney and client, we would do well to apply that admonition to every aspect of representation of the client's interest.

In the case of a legitimate "special appearance" to contest the court's jurisdiction (see fn. 1, *ante*), the intention of the appearing attorney is clear. Defendant attorneys' proposal, for limited liability for appearances, provides no notice to the court or the client as to when this special status begins and when it ends. The need for a genuine "special appearance" to challenge jurisdiction is a matter which is forced upon the client and the attorney because of circumstances beyond their control. The proposed limited-representation status, by contrast, is voluntarily created by the attorney in charge of the litigation and involves intentions undisclosed to either the court or the client.

Defendant attorneys argue that a rule attaching liability as provided by the majority opinion is not necessary to protect the client's interests, because the attorney of record continues to be liable, regardless of the acts of the stand-in attorney. Defendant attorneys' suggestion is unworkable, unacceptable, and unwise. First, defendant attorneys' proposal would create a second tier of responsibility for attorneys, as if they sometimes act as attorneys, and at other times function merely in a secondary capacity as a "stand-in" or a subagent. Attorneys could have a second status comparable to paralegals or secretaries. Second, the two-tier liability concept is amorphous and confusing. Defendant attorneys suggest no standards by which to determine which attorney appearances are "perfunctory" and which are not, if and when an appearance may change from "perfunctory" to "nonroutine," and when the highest duties of professional care apply and when they do not. Third, defendant attorneys' proposed rule would not eliminate the conceded duties of the stand-in attorneys to the attorney of record with whom they have contracted to perform services. Defendant attorneys offer no standard of liability vis-à-vis the attorney of record, and do not differentiate it from the measure for direct liability to the client for inadequate performance. Why, if stand-in attorneys owe duties of care for which they must be liable, should clients be shortchanged by providing them only a secondary and derivative liability for a stand-in attorney's misfeasance? If the stand-in attorney's ultimate liability is not different in these two situations—if clients are not being shortchanged—why suggest two-tier liability at all? Fourth, the responsibilities of attorneys to clients have already been delineated in a substantial body of law. The rules are well settled and the standards are high, as befits a respected profession.

In sum, defendant attorneys' proposal to establish a species of limited-liability representation for "perfunctory" matters creates more problems than it solves. It provides no ready standard to determine when the rule will apply. It blurs the boundaries of the lawyer's duty. It diminishes the obligations of lawyers to protect the interests of the clients they serve. It deprives the court of the ability to control its own proceedings. It does all of these things in the name of "convenience," and not for any real necessity. Given the minimal, passive and after-the-fact protections offered to clients currently, we would be foolish indeed to countenance further erosions of existing protections; given the few burdens placed on attorneys before they may hold themselves out as competent to represent clients before the court, we would be remiss in permitting courtroom attorneys to perform the highest duties of our profession—serving those persons who have business before the court—while allowing them to shirk the responsibilities concomitant with those duties.