[Nos. S008641, S009884. Dec. 13, 1990.]

SHERMAN L. LISTER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Sherman L. Lister, in pro. per., Pansky & Markle, Ellen A. Pansky and R. Gerald Markle for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Marta B. Galeano, Lawrence C. Yee and Harriet Cohen for Respondent.

OPINION

THE COURT.—In this proceeding we review the recommendations of the Review Department of the State Bar Court (review department) in two separate matters which we have consolidated for purposes of decision. In

case No. S008641, the review department recommended that petitioner, Sherman L. Lister, be suspended from the practice of law for three years, that execution of the order be stayed, and that petitioner be placed on probation for three years upon conditions including actual suspension for six months. In case No. S009884, the review department recommended that petitioner receive similar discipline for different acts of misconduct. It also recommended that the six months' actual suspension be served consecutively to that imposed in case No. S008641. In sum, therefore, the review department has recommended one year of actual suspension.

Petitioner contends that the findings and conclusions of the State Bar Court are not supported by the evidence, that the recommended discipline was excessive, and, in the first proceeding, that the referee erred in refusing to consider alleged newly discovered evidence that would have exculpated him.

After reviewing the record, we set aside one finding of misconduct, and modify the discipline to include a total of only nine months' actual suspension.

## FACTS

Petitioner was admitted to the practice of law on June 21, 1966. He has been disciplined once before, a private reproval in 1978.

The evidence and the findings of fact of the referees in the two matters, as adopted by the review department, indicate the following:

A. *The Merritt Matter (Case No. S008641).*

In 1983, Juanita Merritt retained petitioner on an hourly fee basis (Merritt contended it was on a contingency fee basis) to file suit for improper use of photographs of her. Petitioner prepared a complaint but did not file it because his bill had not been paid. The statute of limitations expired. Petitioner took no action to protect the matter from being barred; gave no warning, oral or written, to Merritt regarding the time limits; and did not provide her with the prepared complaint so she could file it herself.

The referee and review department found that had the complaint been filed, "it is extremely unlikely that there would have been a recovery since the defendants were difficult to find, hid well their assets and were otherwise mean spirited characters."

The relationship between Merritt and petitioner eroded, and she retained Stanley Handman as new counsel for all of her legal affairs. On September

20, 1984, Handman wrote to petitioner requesting Merritt's files. Receiving no response, he again wrote to petitioner on October 11, 1984. Again, there was no response.

In early March 1985, Merritt personally contacted petitioner, and made an appointment to pick up her files. She arrived on time but found the door locked. She had to go downstairs to make a telephone call before someone answered the door. Merritt was given many but not all of her files, which she delivered to Handman. On March 7, 1985, Handman wrote again to petitioner requesting the remainder of the files. Petitioner provided neither a written response to the letter nor any further materials.

B. *The Raisor Matter (Case No. S008641).*

In April 1977, Jessie Jacobson died. Jessie's daughter and son-in-law, Helen and Donald Raisor, retained petitioner to "handle all the affairs of" Jessie's estate. The Raisors were unsophisticated in the necessary legal requirements, and relied on petitioner to properly advise them.

Prior to her death, Jessie had deeded certain real property to Helen and other real property of about equal value to her son, Ronald Jacobson. Jessie retained a life estate in the properties. If the properties were deemed as belonging to the estate of Jessie, the total taxes would have been about $34,000. If the properties were deemed a proper gift from Jessie to each of the children, they would pass outside the estate, and each child would have been obligated to pay an amount equal to about one-half of that tax liability, or about $17,000.

Upon Jessie's death, petitioner calculated that there was a tax liability for Helen's property of $17,000. He tendered a cashier's check in that amount to the Internal Revenue Service (IRS). The check contained a restrictive endorsement stating that it was "Full payment of Federal Estate Taxes due from Helen Marie Raisor on property acquired by her upon the death of Jessie G. Jacobson." In a cover letter to the IRS dated August 10, 1978, petitioner stated that he represented only Helen and the executrix of the estate.

In October 1979, Alice Reed, the administratrix of the estate, received from the IRS a letter and check for a little over $18,000 made out to the "Jessie G Jacobson Estate" and Reed. The amount constituted the original amount paid the IRS plus interest. The letter stated that the estate tax liability was considerably greater than that paid, and advised the filing of appropriate forms and payment of the correct amount of taxes.

Reed turned the matter over to petitioner. He advised the Raisors that they were not obligated to pay the taxes and that he would take care of the matter.

Petitioner put the check from the IRS in his file, where it remained until March 1982. Petitioner contended that during this two- and one-half-year period he was "negotiating" with the IRS regarding the payment. However, the referee and review department found the claim not credible, as there was no corroborating evidence to support it.

In 1982, the IRS demanded that the proper forms be filed and that about $52,000 in taxes, penalties and interest be paid. The Raisors brought this to petitioner's attention. He told them that they did not have to pay taxes on property Helen did not inherit or receive (i.e., the property that went to brother Ronald), and that he would "fight the IRS on this matter." At some point during these events, Ronald apparently died. The status of Ronald's property is unclear.

Several months later, the IRS seized the real property that Helen had received. Donald immediately contacted petitioner, who said that "he was in an area of law that he was not too familiar . . . ." Petitioner referred the Raisors to a tax attorney, Marshall Minster. Minster determined that the estate did indeed owe the taxes the IRS claimed. He negotiated a reduction of the total amount, including penalties and interest, to about $45,000. The Raisors paid this by returning the IRS check for $18,000 and writing a check for the difference. Thus, on an original tax liability of $34,000, the Raisors eventually paid about $45,000.

C.    *The Payton Matter (Case No. S009884).*

In June 1986, James Payton retained petitioner to represent him in an action for age discrimination against Payton's former employer. Payton paid petitioner $350 as attorney fees. Payton had retired from his employment in May 1986. His claim was based on a demotion sometime before his retirement from a supervisory position to a nonsupervisory job which he claimed he was not physically capable of handling.

Petitioner made some investigation of Payton's claims and concluded that they were weak. Petitioner did not, however, inform Payton of this conclusion. Around this time, petitioner moved his offices hurriedly and somewhat unexpectedly. Payton's file was lost in the process. Petitioner did not inform Payton of his new address. Petitioner's support staff, especially his secretarial staff, was in a state of chaos during this period.

Payton repeatedly attempted to contact petitioner by telephone but was unable to do so. Petitioner did not return Payton's calls. At one point, petitioner instructed a secretary to tell Payton that petitioner could no longer represent him, and to obtain another attorney. In early 1987, Payton wrote to petitioner complaining about the lack of communication, and stating the intent to report the matter to the State Bar if petitioner did not respond. Petitioner did not reply to the letter.

On October 6, 1987, Payton filed an action in small claims court against petitioner for the return of his fee, and attempted to serve him at his old address. It is not clear whether the action was ever served, but petitioner somehow learned of it. On November 12, 1987, petitioner sent a check to Payton for the full amount of the claim.

D. *The State Bar Investigation (Case No. S009884).*

Payton and an attorney in another matter filed complaints with the State Bar. (The State Bar Court found no misconduct regarding this latter complaint.) On June 11, 1987, and again on September 22, 1987, S. Hank Oh, Special Investigator for the Office of Investigation of the State Bar, wrote to petitioner at his address of record with the State Bar summarizing Payton's claim, and requesting that petitioner respond. Oh sent similar letters regarding the other complaint on July 29, 1987, and September 22, 1987. Petitioner did not respond to any of the letters.

FINDINGS AND RECOMMENDATIONS BELOW

A. *Case No. S008641.*

In the Merritt matter, the referee found that petitioner violated Business and Professions Code sections 6068 and 6103,[1] and former rules 2-111(A)(2) and 6-101(2) of the State Bar Rules of Professional Conduct,[2] in that he wilfully withdrew from employment without taking reasonable steps to avoid foreseeable prejudice to the client, and by so doing failed to use reasonable diligence and his best judgment in her representation. The violations did not harm the client. The referee also found that petitioner wilfully failed to deliver to the client the files demanded by her new attorney until some six months after the initial demand for them.

---

[1] All further statutory references are to the Business and Professions Code. Section 6103 does not itself define a duty or obligation but provides only that a violation of an oath or duty defined elsewhere is a ground for discipline. (*Baker* v. *State Bar* (1989) 49 Cal.3d 804, 815 [263 Cal.Rptr. 798, 781 P.2d 1344].

[2] All further rule references are to the former State Bar Rules of Professional Conduct. The former rules were in effect at the time of the conduct at issue. The present rules took effect on May 27, 1989, after the misconduct involved here.

In the Raisor matter, the referee found that petitioner violated sections 6068 and 6103, and rules 6-101(1) and 6-101(2), in that he knew or should have known that he was not competent to handle the tax and probate questions involved in this case, yet he wilfully continued his representation of the Raisors, and that he wilfully failed to use his best judgment and learning in accomplishing the settlement of the estate with reasonable speed. The clients suffered harm in the form of additional penalties and interest accrued.

The referee also found that petitioner violated sections 6068 and 6103, and rules 8-101(A)(2), 8-101(B)(2) and 8-101(B)(3), in that he wilfully failed to place the property of a client in a place of safekeeping, and failed to maintain complete records of all funds belonging to a client and to render appropriate accounts. The clients did not suffer harm as a result of these violations.

The referee also found misconduct in a separate matter (the Alvord matter).

The referee recommended that petitioner be suspended from the practice of law for three years, that the suspension be stayed, and that petitioner be placed on probation for three years with six months' actual suspension.

The review department unanimously adopted the referee's findings except that it set aside the finding of misconduct in the Alvord matter.[3] It recommended the same discipline as did the referee.

B. *Case No. S009884.*

In the Payton matter, the referee found that petitioner violated: rule 2-111(A)(2), in that he failed, upon withdrawal from employment by Payton, to deliver to Payton the papers and property to which he was entitled; rule 2-111(A)(3), in that, upon withdrawal from employment by Payton, he failed promptly to return any part of the $350 fee which had been paid to him; rule 6-101(A)(2), in that his failure to communicate to Payton his misgivings on the merits of Payton's case and to urge him to seek other advice was a failure of competent performance of his responsibilities as Payton's counsel; and section 6103, because of the foregoing misconduct.

In the matter of the State Bar investigation, the referee found that petitioner violated sections 6068, subdivision (i), and 6103 because his failure to

---

[3] The State Bar does not pursue the claim that petitioner committed misconduct in the Alvord matter; therefore, we do not discuss it further.

reply to Mr. Oh's letters amounted to a failure to cooperate and participate in a disciplinary proceeding pending against him.

In mitigation, the referee found that the 1978 private reproval was too remote and of too little significance to carry any aggravating weight, that the misconduct (in case No. S009884) did not involve multiple acts of wrongdoing or a pattern of wrongdoing, that Payton suffered little or no harm, that petitioner has reimbursed Payton, and that petitioner has been candid and cooperative since the filing of the notice to show cause in the action.

The referee recommended that petitioner be suspended from the practice of law for three years, that the suspension be stayed, and that petitioner be placed on probation for three years with three months' actual suspension consecutive to the suspension imposed in case No. S008641.

By a 13-to-1 vote, the review department adopted the findings of the referee except that it found that petitioner also violated section 6068, subdivision (a) in the matter of the State Bar investigation. It recommended that the period of actual consecutive suspension be six months, not three months. The dissenter found the recommended discipline to be insufficient.

DISCUSSION

Petitioner first challenges the sufficiency of the evidence to support the findings and conclusions below. ■ Petitioner bears the burden of showing that the State Bar's findings are not supported by substantial evidence. (*Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 736 [187 Cal.Rptr. 30, 653 P.2d 321].) In assessing the evidence, "[a]lthough we independently examine the record, we give great weight to the findings below, especially when they are based on conflicting testimony." (*Van Sloten* v. *State Bar* (1989) 48 Cal.3d 921, 931 [258 Cal.Rptr. 235, 771 P.2d 1323].)

After reviewing the record we find that, with one exception, petitioner has failed to meet his burden. The record supports the findings regarding the Merritt matter. Petitioner failed to communicate with his client, failed to protect her interests so that the statute of limitations expired, and failed to timely return her files upon demand. ■ "Failure to communicate with, and inattention to the needs of, a client may, standing alone, constitute grounds for discipline." (*Layton* v. *State Bar* (1990) 50 Cal.3d 889, 903-904 [268 Cal.Rptr. 845, 789 P.2d 1026].)

■ Petitioner contends that because Merritt never paid him, there was no attorney-client relationship. Although there apparently was a misunderstanding as to whether or not petitioner was retained on a contingency fee basis, the record supports the finding that an attorney-client relationship existed between them. Merritt testified that she asked petitioner to file the lawsuit on her behalf, and gave him all the relevant documents. She understood that petitioner was working on the matter. Petitioner's office did, in fact, do substantial work on the case. "No formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client. It is the fact of the relationship which is important." (*Farnham* v. *State Bar* (1976) 17 Cal.3d 605, 612 [131 Cal.Rptr. 661, 552 P.2d 445].) Under the circumstances, an attorney-client relationship existed between petitioner and Merritt. He could not simply abandon her and let the statute of limitations expire.

The findings regarding the Payton matter are similarly supported. Although petitioner conducted some investigation regarding the strength of Payton's claim, and concluded it was weak—a conclusion never questioned—he failed to communicate this to Payton. Because of this, Payton did not benefit from whatever efforts petitioner made on his behalf. ■ It is misconduct for an attorney to wilfully fail to perform the legal services for which he or she has been retained, and to wilfully fail to communicate with a client. If an attorney is essentially withdrawing from employment, he or she is obligated to give due notice to the client (*Ridge* v. *State Bar* (1989) 47 Cal.3d 952, 963 [254 Cal.Rptr. 803, 766 P.2d 569].)

Petitioner also failed to "cooperate and participate in any disciplinary investigation . . . pending against" him. (§ 6068, subd. (i).) He repeatedly ignored letters from the State Bar requesting a response to the claims of misconduct it was investigating.

Regarding the Raisor matter, we find the record supports the findings that petitioner wilfully continued to represent the Raisors even though he knew or should have known he was not competent to handle the matter, and that he failed to use his best judgment and learning in accomplishing the settlement with reasonable speed. After petitioner received the check for $18,000 from the IRS, some two and one-half years passed before the IRS seized the property in question, and the Raisors were forced to turn the matter over to another attorney. Nothing was accomplished during this time except to accumulate more interest and penalties.

■ We disagree, however, with the finding that in the Raisor matter, petitioner *additionally* misappropriated funds in violation of rules 8-

101(A)(2), 8-101(B)(2) and 8-101(B)(3).[4] This finding relates to petitioner's keeping the $18,000 IRS check in the file. The check was kept in a safe place and the clients clearly knew of its existence since Alice Reed, the administratrix of the estate, received it and turned it over to petitioner. There was no danger of commingling attorney and client funds. The only possible misconduct regarding rule 8-101 lies in the failure to cash the check and place the proceeds in a trust account.

Petitioner asserted two tactical reasons for not cashing the IRS check. First, he believed that by cashing the $17,000 check he had tendered previously, the IRS had become bound by the check's restrictive endorsement that it constituted payment in full of the Raisors' tax liability. He believed that cashing the IRS check would, in return, constitute agreement that the earlier check was not payment in full, and that a tax liability remained. This, he believed, would weaken his clients' position with the IRS.

Second, since the estate was apparently insolvent, and the Raisors would themselves have to pay any tax liability, petitioner wanted them to have to pay only the tax on the property they received, not also the tax on the brother's property. The brother died at some point during these events. The check sent to the IRS was from the Raisors themselves, not the estate. The $18,000 check from the IRS, on the other hand, was made out to the estate and the administratrix of the estate. The distinction between the Raisors and the estate was significant, especially since petitioner did not want the Raisors to have to pay the tax on the entire estate. Petitioner believed that to cash the check and place it in an account for the Raisors would obliterate the distinction, to the clients' detriment.

No expert testimony was presented on the validity of petitioner's position. We do not, however, believe that rule 8-101 requires an attorney to cash a third party's check to the client when the attorney believes in good faith that to do so would weaken the client's position in a dispute with that

---

[4] Rule 8-101(A) stated, in pertinent part:

"All funds received or held for the benefit of clients by a member of the State Bar or firm of which he is a member, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labelled 'Trust Account,' 'Client's Funds Account' or words of similar import . . . ."

Rule 8-101(B)(2) and (3) stated:

"A member of the State Bar shall:

". . . . . . . . . . . . . . . .

"(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the member of the State Bar and render appropriate accounts to his client regarding them."

third party. Petitioner reasonably wanted to avoid the Raisors' having to pay tax on Ronald's property, and for that reason did not cash the check.

It might be argued that since the IRS check was payable to the estate and the administratrix, and petitioner represented the Raisors, he was in a conflict situation. The check, however, was a refund of money paid by the Raisors. The estate had no independent interest in the money at that point. Petitioner did mishandle the matter in a number of respects. His actions—or, more precisely, inactions—caused the matter to drift for two and one-half years until the IRS seized his clients' property and charged substantial penalties, to the detriment of his clients. This was misconduct, as found above. Petitioner did not, however, additionally violate rule 8-101.

■ Petitioner also contends that in the Raisor matter, the referee erred in refusing to reconsider its findings or to allow him to introduce alleged newly discovered evidence. The notice to show cause in this matter was filed on March 26, 1987. The hearing commenced on December 8, 1987, and concluded on March 15, 1988. The referee's decision was filed on April 4, 1988. On April 14, 1988, petitioner moved for reconsideration and to present newly discovered evidence. Petitioner claimed he had discovered files which would show "that he negotiated with the Internal Revenue Service on behalf of the client both in writing and on the telephone." The referee denied the motion, finding that petitioner "had more than sufficient time to collect his evidence and present it at any of the three days of actual hearing or to ask for additional time and provide the reasons for such request; there has been no showing of diligence in trying to obtain the alleged new evidence earlier."

Although the referee could have allowed the introduction of additional evidence (rule 562, Transitional Rules Proc. of State Bar), such introduction may be denied if the request is untimely and there is no adequate explanation for the failure to present the evidence earlier. (*Warner* v. *State Bar* (1983) 34 Cal.3d 36, 42 [192 Cal.Rptr. 244, 664 P.2d 148].) Petitioner had ample time to present all evidence at the hearing. The hearing ended almost a year after the notice to show cause was filed. The denial of the belated attempt to admit additional evidence was within the referee's discretion.

■ Petitioner next contends that the imposition of one year's actual suspension was excessive. We exercise our independent judgment in determining the appropriate discipline, but in doing so we give great weight to the recommendation of the State Bar Court. (*Arm* v. *State Bar* (1990) 50 Cal.3d 763, 774 [268 Cal.Rptr. 741, 789 P.2d 922].) We find that the one

year's total suspension was excessive, especially considering that one of the findings of discipline is being set aside.

Petitioner's prior record of discipline is minor and remote in time. Except for the Raisor matter, his clients did not suffer harm as a result of his misconduct. The referee in the second matter found that, although petitioner ignored the initial investigatory letters, he has been candid and cooperative since the filing of the notice to show cause. Petitioner's repeated acts of misconduct are serious matters, but we conclude that two consecutive suspensions of six months' duration are excessive. A total of nine months' actual suspension, as recommended by the referee in the second matter, is adequate to protect the public and is more proportionate to the misconduct.

## DISPOSITION

We order that the finding of a violation of rule 8-101 in the Raisor matter be set aside; that petitioner Sherman L. Lister be suspended from the practice of law for a period of three years; that execution of the order for such suspension be stayed; and that petitioner be placed upon probation for three years upon all of the conditions of probation adopted in case No. S009884 by the review department at its March 2, 1989, meeting, except that conditions 1 and 8 are modified to require a total of nine months of actual suspension for both cases.

Petitioner shall also pass the Professional Responsibility Examination within one year after the effective date of this order, and comply with the provisions of rule 955(a) and (c), California Rules of Court, within 30 and 40 days, respectively, after the effective date of this order.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)