Filed 9/1/21  Kaur v. Manlin CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JASWINDER KAUR, | B294311 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC686105) |
| v. | |
| ROGER A.S. MANLIN, et al., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Betty Agawa APC, Thomas K. Agawa, for Plaintiff and Appellant.

Roger A.S. Manlin, Esq., in pro. per., for Defendant and Respondent.

_____

## INTRODUCTION

Roger Manlin sued Jaswinder Kaur for unpaid attorney fees and lost. Kaur then sued Manlin for abuse of process and malicious prosecution. Manlin filed a special motion to strike under Code of Civil Procedure section 425.16.[1] The trial court granted the motion and dismissed Kaur's case.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Prior Case:  Manlin Sued Kaur*

Manlin is a licensed California attorney. Cal-Western Business Services, Inc. is his assignee for collecting legal fees.

On May 28, 2014, Cal-Western sued Kaur and Jasbir Singh (Kaur's husband) as individuals and trustees of the Jaswinder Kaur and Jasbir Singh Irrevocable Children's Trust, as well as 3B Hotels, LLC (collectively defendants) and others for unpaid legal fees on behalf of Manlin. Cal-Western alleged Manlin served as an attorney for defendants for over three-and-a-half years. Cal-Western detailed the legal matters in which Manlin represented defendants and alleged they incurred nearly $600,000 in attorney fees, costs and expenses during the representation period.

On July 8, 2014, Singh filed a cross-complaint against Manlin, alleging he committed malpractice during his representation in one of the matters.

At trial, Manlin substituted himself for Cal-Western as plaintiff. The court granted a nonsuit in favor of Kaur, the trustees and 3B Hotels on Manlin's unpaid legal fees case. But a jury found that Singh owed Manlin attorney fees and that even

---

[1]     Statutory references are to the Code of Civil Procedure unless otherwise noted.

2

though Manlin was negligent in his representation of Singh, Manlin's negligence was not a substantial factor in causing harm to Singh.

B.    *The Current Case:  Kaur Sued Manlin*

Kaur sued Manlin, Cal-Western and Patrick Johnston (an attorney for Cal-Western) for abuse of process and malicious prosecution in December 2017.  She alleged they brought and prosecuted the prior unpaid legal fees case against her, even though they should have known Manlin never had a fee agreement or attorney-client relationship with her.  She also alleged they sued her to force Singh to settle his unfiled future malpractice claim against Manlin.  Specifically, "[Manlin] deliberately included [Kaur] as a named defendant for the primary purpose of forcing her husband, Jasbir Singh, to settle his cross-action for malpractice against Mr. Manlin."

The court entered a default against Manlin in March 2018 but set aside the default on August 31, 2018.  Manlin filed his answer on September 11, 2018 and his special motion to strike on September 17, 2018.[2]

---

[2]    On appeal, Manlin says "[the] 'underlying case' was deemed related to the lead case, LASC Case No. BC546765, and was filed on May 28, 2014 [. . .] as reflected in the docket sheet of the lead case, of which this Court is requested to take judicial notice."

To the extent he is asking that we take judicial notice of the trial court docket in BC546765, the prior case on unpaid legal fees, we do so.  (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 755 [granting request to judicially notice docket from municipal court]; *Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 872, fn. 3 ["On our own motion, we have taken judicial notice of the superior court's public record docket entries."].)

C.    *Manlin's Special Motion To Strike*

In his motion, Manlin argued he reasonably believed he had an attorney-client relationship and fee agreement with Kaur. In his declaration, he described several encounters with her and Singh, which led him to believe he had an attorney-client relationship with both. Manlin listed representative matters that he spoke to Kaur and Singh about, in which one of them was a party. Manlin also said he regularly had conferences with them at their restaurant to discuss the "status of litigation involving [Kaur], Singh, and/or their assets." Lastly, Manlin said he "justifiably believed" all the invoices he submitted for his legal fees went to Kaur because she "kept the books for their various operations" and "approved any and all checks" to pay the invoices.

In her opposition, Kaur argued Manlin sued her to force Singh to settle his unfiled future malpractice claim against Manlin. Specifically, "Mr. Manlin Filed His Attorney Fee Action Knowing That Mr. Singh Was Preparing To Sue Mr. Manlin for Malpractice. [¶] . . . [¶] Mr. Manlin simply filed his Attorney Fee Action first in an attempt to obtain an advantage in the litigation." In her declaration, she explained, "[i]n July 2013, Mr. Manlin came into my husband's business and demanded that my husband sign a paper or give Mr. Manlin an interest in the business. My husband refused to sign the paper or give Mr. Manlin an interest in the business. [¶] . . . Mr. Manlin then stated that he was not going to settle the Weissman Wolff case and Mr. Singh would get a judgment against him for over $400,000.00. After my husband protested, Mr. Manlin told my husband, 'f**k you, you can sue me for mal-practice.'" In his declaration, Singh similarly described his fight with Manlin and how Manlin dared Singh to sue Manlin for malpractice.

4

Kaur also argued Manlin had insufficient evidence to support his unpaid legal fees claim against her. Specifically, Manlin never produced a fee agreement between them, documentation of any payment he received from her, or any other evidence to support his belief that she was his client. In her declaration, she said her relationship with him was minimal. She knew nearly nothing about any of the representative matters. She never authorized him to represent her, and he was Singh's attorney, not hers.

After a hearing, the trial court granted Manlin's motion, finding "[t]here is no showing or evidence of malice" and dismissed Kaur's complaint without prejudice.[3]

## DISCUSSION

Kaur argues the trial court erred in granting Manlin's special motion to strike for three reasons. First, the motion was untimely. Second, Manlin failed to establish that Kaur's claims arose out of protected conduct. Third, Kaur is likely to prevail on her causes of action.

We disagree with each of Kaur's reasons.

A.   *Special Motion To Strike Under Section 425.16*

Section 425.16 authorizes a special motion to strike for the early dismissal of meritless claims arising from a defendant's right to petition or free speech: "The Legislature enacted Code of Civil Procedure section 425.16 to address so-called strategic lawsuits against public participation (SLAPP). [Citation.] This anti-SLAPP statute makes available a special motion to strike

---

[3]   The trial court's minute order contains the rulings and finding. The appellate record does not include a reporter's transcript.

meritless claims early in litigation—but only if the claims arise from acts in furtherance of a person's 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139 (*FilmOn.com*).)

### 1. *Timing*

Subdivision (f) of section 425.16 provides, "[t]he motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper."

The flexible time limit enables a court to resolve an "'anti-SLAPP claim at the outset of the litigation before the parties have undertaken the expenses of litigation that begin to accrue after the pleading stage of the lawsuit.'" (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 783 (*Platypus*); see *Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1188 (*Hewlett-Packard*).)

### 2. *Procedure*

In ruling on a special motion to strike, the trial court engages in a two-step process. (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321 (*Barry*); accord, *Baral v. Schnitt* (2016) 1 Cal.5th 376, 381 (*Baral*).)

"First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral*, *supra*, 1 Cal.5th at p. 384; accord, *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*); *Barry*, *supra*, 2 Cal.5th at p. 321.)

Second, "the plaintiff must introduce substantial evidence that would support a judgment of relief made in plaintiff's favor."

(*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 670.) "[A] trial court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based' in evaluating the plaintiff's probability of success." (*Ibid.*; see § 425.16, subd. (b)(2).) The court engages in a "'summary-judgment-like'" analysis. (*Baral*, *supra*, 1 Cal.5th at p. 384; see *Taus v. Loftus* (2007) 40 Cal.4th 683, 714.) "[S]peculative inferences not supported by the evidence proffered need not be considered." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 795.) But the court "accepts the plaintiff's evidence as true"; it "does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Baral*, at pp. 384-385; see *Barry*, *supra*, 2 Cal.5th at p. 321.)

"Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, italics omitted; accord, *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

B. *Standard of Review*

We review a trial court's decision to hear a late-filed special motion to strike for abuse of discretion. (*Hewlett-Packard*, *supra*, 239 Cal.App.4th at pp. 1187-1188) To establish abuse of discretion in allowing a late motion to proceed, the appellant must "demonstrate that the trial court applied the statute in a manner that is incompatible either with the statute's actual mandate, or with its 'purposes and policy.'" (*Id.* at p. 1188.)

7

We review de novo an order granting or denying a special motion to strike. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884; accord, *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940; *Park, supra,* 2 Cal.5th at p. 1067.) "That is, we independently determine whether the challenged cause or causes of action arise from protected activities, and if so whether the plaintiff has demonstrated a probability of prevailing on the claims." (*Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 710.)

C.  *The Trial Court Did Not Abuse Its Discretion by Allowing Manlin's Special Motion To Strike To Proceed*

Although not explicit, the trial court necessarily found it was not too late for Manlin to file his motion because the court decided the motion on its merits. "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

Kaur did not include in the appellate record a proof of service or other evidence showing when her complaint was served on Manlin. (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935 ["[A]ppellant has the burden of providing an adequate record."].)

And even if Manlin filed his motion over 60 days after service, the trial court did not err in allowing him to do so. Manlin filed his motion only 17 days after the court set aside the default.

Kaur has not shown the trial court abused its discretion in hearing Manlin's motion on the merits. To establish abuse of discretion, she must "demonstrate that the trial court applied [section 425.16] in a manner that is incompatible" with early dismissal of meritless claims arising from a right to petition or free speech. (*Hewlett-Packard, supra,* 239 Cal.App.4th at p. 1188; see

8

also *FilmOn.com*, *supra*, 7 Cal.5th at p. 139; *Platypus*, *supra*, 166 Cal.App.4th at p. 783.)  The appellate record does not demonstrate that.

Kaur argues the trial court should not have allowed the motion to proceed because Manlin did not attach the motion to his application to set aside the default and because the trial court did not cite any facts to support its decision to hear the belated motion.  But no authority supports her argument.  (See *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 113 [rejecting appellant's argument when appellant "contend[ed] the court abused its discretion, but offer[ed] no authority for the proposition[] that a trial court should be required to state reasons for exercising its discretion to hear a belated anti-SLAPP motion"].)

D. *The Trial Court Properly Granted Manlin's Special Motion To Strike*

1. *Step one: Kaur's claims arise out of protected conduct*

"A defendant's burden on the first prong is not an onerous one.  A defendant need only make a prima facie showing that plaintiff's claims arise from the defendant's constitutionally protected free speech or petition rights."  (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 112.)

Manlin met his burden.  It is well established that both claims of malicious prosecution and abuse of process arise out of protected conduct.  (See *Lee v. Kim* (2019) 41 Cal.App.5th 705, 719 ["[E]very claim of malicious prosecution is a cause of action arising from protected activity, because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding"]; *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1570

["abuse of process is also subject to the statute since it arises from the exercise of the right of petition"]; see also *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1065 (*Rusheen*) [abuse of process]; *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735 [malicious prosecution].)

Kaur contends Manlin failed to meet his burden because he relied on inadmissible evidence and because he argued his reasonable belief of an attorney-client relationship for the first time in his motion and not during the prior case. But there is no "inadmissible evidence" that needs to be considered. It is uncontroverted Kaur is suing Manlin for abuse of process and malicious prosecution. And Kaur offers no authority to support her contention that only arguments made during a prior case can be asserted in a defendant's motion to strike in a subsequent case.

      2.    *Step two: Kaur failed to establish a likelihood of success on either claim*

      a.    *Abuse of process*

"To succeed in an action for abuse of process, a litigant must establish the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Rusheen*, *supra*, 37 Cal.4th at p. 1057.)

Kaur failed to make a prima facie case for abuse of process.

Essentially, Kaur's case is Manlin pursued a meritless lawsuit against her for an improper purpose. Kaur claims (1) the ulterior motive for Manlin's filing of the unpaid legal fees claim was to use it as a "club" against Singh, and (2) the willful use of process was including Kaur in the lawsuit even though Manlin's dispute was with Singh.

10

But an abuse of process claim requires more.  "[W]hile a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action."  (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169.)  "Alternatively stated, neither the initiation of a meritless claim nor the continued prosecution of a claim after it becomes apparent the claim is meritless can support an abuse of process cause of action."  (*S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 42.)  Instead, abuse of process is the misuse of the power of the court to commit an injustice:  "'[T]he essence of the tort [of abuse of process is] . . . misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice.'"  (*Rusheen, supra,* 37 Cal.4th at p. 1057.)

### b. *Malicious prosecution*

"There are three elements to malicious prosecution.  The plaintiff, who was the defendant in the underlying action, must prove (1) the defendant was responsible for the underlying lawsuit, which ended in a legal termination favorable to the plaintiff; (2) the defendant brought the underlying lawsuit without probable cause; and (3) the defendant brought the underlying lawsuit with malice."  (*Zhang v. Chu* (2020) 46 Cal.App.5th 46, 53 (*Zhang*); see (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*).)

Kaur failed to make a prima facie case for malicious prosecution because she did not prove malice.

11

*i.       Favorable termination*

This element is uncontested.  Manlin brought the prior legal fee dispute against Kaur, and after the matter went to trial, a motion for nonsuit was granted in Kaur's favor.  "[U]nless a trial court otherwise specifies, a grant of nonsuit in the underlying case is a 'legal termination favorable to the plaintiff' for the purposes of a subsequent malicious prosecution action."  (*Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 866.)  Because the trial court's order granting nonsuit in favor of Kaur does not indicate otherwise, the underlying lawsuit "ended in a legal termination favorable to" Kaur.  (*Zhang*, *supra*, 46 Cal.App.5th at p. 53.)

*ii.       Absence of probable cause*

Kaur proved this element—that Manlin did not have probable cause to sue her.

To determine if probable cause exists to bring an action, the suit must be "*arguably tenable*, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable."  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 824, abrogated on other grounds by statute as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547.)  "[P]robable cause is determined objectively, i.e., without reference to whether the attorney bringing the prior action believed the case was tenable."  (*Id.* at p. 817.)

The question is whether a reasonable attorney in Manlin's position would believe he had an attorney-client relationship with Kaur and was entitled to collect legal fees.  As is relevant here, "'[n]o formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client.  It is the fact of the relationship which is important.'"  (*Lister v. State Bar* (1990) 51 Cal.3d 1117, 1126.)  "'Intent and conduct are critical to the

formation of an attorney-client relationship.'" (*Shen v. Miller* (2012) 212 Cal.App.4th 48, 57.) And "[a]n attorney-client relationship is not created by the unilateral declaration of one party to the relationship." (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 729.) Still, when an attorney agrees to represent a client on a contingency fee basis or when it is reasonably foreseeable the expense to a client will exceed $1,000, the agreement must be in writing. (Bus. & Prof. Code, §§ 6147, 6148.)

Kaur contends Manlin's inability to produce any evidence to support an attorney-client relationship shows he did not have probable cause to sue her. Specifically, she says his only support is his declaration, in which he says he reasonably believed he had an attorney-client relationship with her. But he did not provide evidence of fee agreements, payments received, or other relevant documents to support his belief.

At oral argument, Manlin admitted he did not have a signed written fee agreement with Kaur or Singh. But in his declaration, Manlin described several encounters with Kaur and Singh, which led him to believe he had an attorney-client relationship with Kaur. Manlin said he had conversations with Kaur, including one at his home, where they discussed the settlement of a pending lawsuit. Manlin also said he regularly had conferences with Kaur and Singh at their restaurant to discuss the "status of litigation involving [Kaur], Singh, and/or their assets." Finally, Manlin said he "justifiably believed" all the invoices he submitted for his legal fees went to Kaur because she "kept the books for their various operations" and "approved any and all checks" to pay the invoices.

In her declaration, Kaur said she never hired Manlin, never received an invoice from him and never paid him for an invoice. She also explained that her relationship with him was limited to

13

greeting him at the restaurant, that their conversation at his home was "limited" and that Singh made the decisions regarding the case discussed there. Plus she explained that for all the representative matters Manlin mentioned, she was either not a party to the litigation or represented by a different attorney.

Accepting Kaur's evidence as true—as we are required to do—her relationship with Manlin was less than he claimed. (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3) A reasonable attorney would know from the circumstances she described that he was not representing her. More importantly, a reasonable attorney would know that the fee arrangement should have been in writing, especially if he sought $600,000 in legal fees. (Bus. & Prof. Code, §§ 6147, 6148.)

### iii. Malice

The trial court found "[t]here is no showing or evidence of malice."

We agree. Kaur failed to prove this element—that Manlin sued her with malice.

"'The "malice" element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will or some improper ulterior motive.'" (*Soukup*, *supra*, 39 Cal.4th at p. 292.) "It has been pointed out that the 'principal situations in which the civil proceedings are initiated for an improper purpose are those in which (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3)

14

the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.'" (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383, abrogated by statute on other grounds as stated in *Wilton v. Mountain Wood Homeowners Assn.* (1993) 18 Cal.App.4th 565, 571, fn. 1.)

Kaur's malice argument appears to be based on situation four: she claims Manlin sued her for unpaid legal fees to force Singh to settle his unfiled future malpractice claim against Manlin.[4] Specifically, "[Manlin] deliberately included [Kaur] as a named defendant for the primary purpose of forcing her husband, Jasbir Singh, to settle his cross-action for malpractice against [Manlin]." And "[Manlin] Filed His Attorney Fee Action Knowing That Mr. Singh Was Preparing To Sue [Manlin] for Malpractice. [¶] . . . [¶] [Manlin] simply filed his Cal Western Action first to obtain an advantage in the litigation."

According to Kaur, these facts establish Manlin's malicious intent: Manlin could not present any evidence of an attorney-client relationship or fee agreement, and a "final verbal fight" took place during a meeting between Singh and Manlin. Specifically, during the fight, Kaur contends Manlin demanded Singh either agree to pay Manlin $10,000 per month or give him an interest in

---

[4] At oral argument, Kaur contended Manlin sued her to force Singh to settle both the fees case with Manlin and Singh's unfiled future malpractice claim against Manlin. But she conceded she never raised the fees argument before. She relied on only the malpractice argument in her complaint, her opposition to the special motion to strike and her appellate briefs. Because the fees argument was raised for the first time in oral argument, it is forfeited. (*Yee v. Cheung* (2013) 220 Cal.App.4th 184, 197.)

15

the restaurant. Then, when Singh refused to comply with either of Manlin's requests, Manlin said, "'f\*\*k you, you can sue me for malpractice.'" But the fight took place in July 2013—10 months before Manlin and Cal-Western sued Kaur, Singh and 3B Hotels for unpaid legal fees in May 2014, and about a year before Singh sued Manlin for malpractice in July 2014.

Kaur's argument is too speculative to amount to malice against Singh, much less against Kaur. At its core, Kaur claims Manlin knew Singh would sue Manlin for malpractice because a year earlier, he said "'you can sue me for mal-practice,'" and later he asked Singh not to sue him for malpractice. These statements may establish Manlin knew he *could* be sued for malpractice; they do not establish Manlin knew Singh *would* sue him for malpractice. Besides, none of this shows Manlin had animosity toward Kaur.

Kaur also argues lack of probable cause is sufficient to establish malice. Not true. "The lack of probable cause is one factor in determining the presence of malice, but alone it is insufficient." (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1543.) It must be supplemented by additional evidence, which she has not provided.[5] (*Golden State Seafood, Inc. v. Schloss* (2020) 53 Cal.App.5th 21, 38.)

---

[5] On appeal, Manlin asks that we ignore Kaur's request for judicial notice filed in the trial court. But in any event the documents Kaur requested notice of are still part of the appellate record: they were exhibits to declarations in support of her opposition to the special motion to strike.

16

## DISPOSITION

The order granting Manlin's special motion to strike under section 425.16 is affirmed.  Manlin is entitled to costs on appeal, including attorney fees in an amount to be determined by the trial court.


IBARRA, J.*


We concur:


PERLUSS, P. J.


FEUER, J.

---

\* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.