Filed 11/22/24  Bogota Corporation v. Seiden CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| BOGOTA CORPORATION, | B332296 |
| Plaintiff, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV17928) |
| LEWIS SEIDEN, | |
| Defendant, Cross-complainant and Appellant; | |
| KGM3, LLC, | |
| Cross-defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Corder Law Office and Travis A. Corder for Defendant, Cross-complainant and Appellant.

Lewitt, Hackman, Shapiro, Marshall & Harlan, Jessica W. Rosen and Nicholas S. Kanter for Cross-defendant and Respondent.

_____

## INTRODUCTION

The trial court imposed monetary sanctions for discovery misconduct against appellant Lewis Seiden payable to respondent KGM3, LLC (KGM3).[1]  In this appeal, Seiden challenges those monetary sanctions on three procedural grounds.  First, he contends the trial court erred when, after he did not file any written opposition to KGM3's motion for sanctions, it issued its ruling via minute order the day before the scheduled hearing without holding an in-court oral hearing. Second, he contends we should reverse because KGM3 served its motion by e-mail even though he was representing himself at the time and had not consented to electronic service.  Third, he contends the court's minute order did not adequately state the court's ruling.  We find no merit to any of Seiden's arguments and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Seiden's Commercial Landlord Sues Him and Seiden Cross-complains against KGM3

Seiden sells and leases cars.  Seiden leased office space from Bogota Corporation (Bogota) to operate his business.  He utilized two parking spaces on the leased property to show cars to

_____

[1] The trial court also imposed terminating sanctions which are the subject of a separate appeal.

customers, but stored his inventory off the property on land not owned by Bogota. In 2019, in connection with its contemplated sale of the property to KGM3, Bogota requested that Seiden execute a tenant estoppel certificate.[2] Seiden refused. Bogota consummated the sale anyway, and in May 2020 it sued Seiden. Bogota alleged Seiden had wrongfully refused to execute the estoppel certificate unless Bogota compensated him for meritless claims, which needlessly forced Bogota to place money in escrow as security for those claims. Bogota also sued Seiden for converting water from a spigot located in the common area of the property by using it to wash his car inventory on the lot across the street.

On October 26, 2020, Seiden, represented by counsel, filed a cross-complaint against KGM3, claiming it had breached the lease by, among other things, failing to adequately maintain the property, prohibiting him from using the common area water spigot, and failing to make promised improvements. Seiden sought a rebate of rent and compensation for an alleged decrease in his business income.

## B.    Seiden Begins Representing Himself

On September 10, 2021, Seiden's counsel substituted out of the case and Seiden began to represent himself.

---

[2] "Estoppel certificates inform prospective buyers and lenders of the lessees' understanding of a lease agreement. By providing independent verification of the presence or absence of any side deals, estoppel certificates prevent unwelcome post-transaction surprises that might adversely affect the building's income stream . . . ." (*Robert T. Miner, M.D., Inc. v. Tustin Ave. Investors* (2004) 116 Cal.App.4th 264, 273.)

3

On November 10, 2021, Seiden filed a first amended cross-complaint; on August 17, 2022, he filed a second amended cross-complaint.[3]  Seiden alleged that KGM3 interfered with his use of the property by continuing Bogota's breaches and breaching the lease in new ways, including by barring Seiden from various areas of the property.  Seiden also alleged he suffered personal injury, and his business was harmed, after a sewer line access was altered causing noxious gas to enter his office space.

## C.  KGM3's Motions to Compel and for Discovery Sanctions

On February 7, 2023, the trial court granted KGM3's motion to compel Seiden to provide further responses to special interrogatories concerning his damages claims; the court also granted KGM3 $2,625 in sanctions.[4]

On March 29, 2023, KGM3 filed a motion under Code of Civil Procedure[5] section 2023.030 for terminating sanctions, or alternatively, evidentiary and issue sanctions, along with monetary sanctions due to Seiden's alleged misuse of the discovery process.  KGM3 primarily contended that Seiden had failed to provide responsive information substantiating his lost business income claims.  KGM3 asserted Seiden was evasive at his deposition, for example stating he "would have to check"

---

[3] In his second amended cross-complaint, Seiden also asserted claims against defendants other than KGM3.  Those other defendants are not parties to this appeal and we omit any discussion of them.

[4] The $2,625 sanctions award is not at issue in this appeal.

[5] Unspecified statutory references are to the Code of Civil Procedure.

whether he had sold more than two cars in 2022 and refusing to identify the business records where he could obtain the information. Then, after KGM3 successfully moved to compel Seiden to provide further responses to special interrogatories, his further responses continued to be evasive and reasserted objections the court had already found lacked merit. In addition, Seiden made suspect claims that he had lost responsive information due to a computer problem. KGM3 questioned the bona fides of this assertion, and argued in the alternative that if Seiden had in fact lost responsive information then he had "permitted the spoliation of evidence."

KGM3 noticed its sanctions motion for hearing on July 11, 2023. Along with the motion, KGM3 filed an ex parte application to advance the hearing date because of its proximity to the August 14, 2023 trial date. KGM3 served its motion and ex parte application on Seiden by e-mail at the address used by his former counsel to serve the substitution of attorney form on Seiden.

Seiden filed an opposition to the ex parte application on March 29, 2023, the same day KGM3 filed both the sanctions motion and related ex parte application. Seiden argued KGM3 had not shown ex parte relief advancing the hearing on the sanctions motion was warranted. He did not assert there was any defect in service. The opposition was served by mail.

The next day, March 30, the trial court granted the application and rescheduled the hearing on KGM3's sanctions motion for May 2, 2023.

On April 12, 2023, about a week before his opposition to KGM3's sanctions motion was due, Seiden e-mailed KGM3's counsel requesting to continue the hearings on several motions, including KGM3's sanctions motion, stating, "I need time to

5

retain counsel." KGM3's counsel refused, so, on April 13, 2023, Seiden filed an ex parte application to continue the hearings. As part of this request, Seiden did not assert there was any issue with KGM3 having served the sanctions motion on him by e-mail. Instead, the proof of service attached to the April 13, 2023 ex parte application indicated Seiden had it served electronically "[b]ased on a court order or an agreement of the parties to accept service by e-mail or electronic transmission."

KGM3 opposed Seiden's application, in part based on evidence that Seiden had been representing for nearly eight months that he was intending to retain counsel and still had not done so.

On April 14, 2023, the court denied Seiden's application, finding that Seiden "failed to make an affirmative factual showing of irreparable harm, immediate danger or any other statutory basis for granting the relief ex parte." That same day, the case was assigned to another judge, effective April 17, 2023. On April 17, the court sua sponte continued the hearing on KGM3's motion for sanctions to June 21, 2023. On May 3, 2023, Seiden filed a peremptory challenge to the assigned judge, and, on May 9, 2023, the case was reassigned again.

On May 15, 2023, KGM3 refiled its sanctions motion to calendar it before the new judge, setting it for hearing on June 9, 2023. Although the motion differed in some respects from the version KGM3 had filed on March 29, 2023, it was based on the same substantive grounds. The motion was electronically served on Seiden at the same e-mail address used for the original sanctions motion.

On May 18, 2023, KGM3 filed an amended notice of its sanctions motion, identifying a new hearing date of June 14,

6

2023.  This amended notice was electronically served on Seiden at the same e-mail address.

On May 20, 2023, Seiden e-mailed KGM3's counsel requesting to reschedule the hearing on the sanctions motion from June 14 to June 21 or later.  Seiden sent his e-mail as a reply to KGM3's May 18, 2023 electronic service; once again he raised no issue with that electronic service.  KGM3's counsel refused Seiden's request.  Thus, the hearing remained scheduled for June 14 and Seiden's opposition was due June 1.

D.    **Seiden Fails to File an Opposition and the Trial Court Grants KGM3's Sanctions Motion**

Seiden did not file an opposition to the sanctions motion. On June 7, 2023, KGM3 filed a notice of Seiden's failure to serve or file an opposition by the June 1 due date.  It also served the notice of non-opposition on Seiden electronically.

Also on June 7, 2023, attorney Travis Corder substituted into the case to represent Seiden.  On June 13, 2023, Corder attempted to file an ex parte application to continue the hearing on the sanctions motion, but the application was rejected by the court clerk because Corder missed the 10:00 a.m. filing deadline.[6]

Later on June 13, the trial court advanced the hearing date and granted the sanctions motion without holding a hearing, awarding KGM3 $5,835 in monetary sanctions.  The court's minute order stated that KGM3's motion was "well-taken, unopposed and granted in [its] entirety."

---

[6] Seiden later adduced evidence that the filing was delayed because the filing service Corder used unexpectedly did not recognize his password, requiring him to expend time to change his password.

7

### E. Seiden Files a Motion to Set Aside but Appeals Before the Trial Court Rules

On July 11, 2023, Seiden filed a motion under section 473, subdivision (b) to set aside the trial court's June 13 order on KGM3's sanctions motion. Seiden contended the court should set aside and vacate the sanctions award because the order resulted from his attorney's failure to file an opposition or a timely ex parte application to continue the hearing. He also argued that the order violated his constitutional due process rights, section 2023.030, and California Rules of Court, rule 3.1348(b) because the court did not hold an in-court hearing. Seiden did not argue in the motion to set aside, or in any other pleading filed before he appealed the monetary sanctions order, that service of the sanctions motion had been improper.

KGM3 opposed the motion to set aside, arguing in part that Seiden, not his attorney, was responsible for the failure to timely oppose the sanctions motion or obtain a continuance of the hearing date, as those deadlines lapsed before counsel substituted back into the case. KGM3 also argued the trial court issued its order because it concluded KGM3's motion was meritorious, not on the ground the motion was unopposed. The court held a hearing on the set aside motion on August 11, 2023, and took the matter under submission. That day, Seiden appealed the court's June 13, 2023 order imposing monetary sanctions. The court denied Seiden's motion to set aside on August 17, 2023.[7]

---

[7] The court also entered a judgment of dismissal in favor of KGM3 on August 17, 2023, based on its separate grant of terminating sanctions. Seiden separately appealed the

8

## DISCUSSION

Seiden asks us to reverse the trial court's order imposing monetary sanctions against him, arguing the court improperly issued the order without holding an oral hearing, he did not receive proper notice of the motion because he had not consented to electronic service, and the trial court's minute order failed to adequately state its ruling. Seiden challenges only these procedural aspects of the trial court's order, and not the substantive merits such as whether his conduct was sanctionable or the amount of the sanction awarded. We have jurisdiction over Seiden's appeal under section 904.1, subdivision (a)(12).

### A. Standard of Review

"[I]t is a fundamental principle of appellate procedure that a trial court [order] is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the [order]." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Interpretation of a statute or constitutional provision is a question of law that we determine independently. (E.g., *Brookside Investments, Ltd. v. City of El Monte* (2016) 5 Cal.App.5th 540, 548, fn. 4.) Interpretation of the California Rules of Court is also a question of law that we determine independently. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81.)

---

August 17, 2023 judgment (appeal No. B334424). KGM3 filed a motion to consolidate appeal No. B334424 with this appeal, which we denied.

9

**B.    Seiden Fails to Establish a Statutory or Constitutional Right to Present Oral Argument When He Failed to File an Opposition to the Sanctions Motion**

Seiden contends he was entitled to an oral hearing on KGM3's sanctions motion under the applicable statute and his constitutional right to procedural due process.[8]  We first address whether Seiden was statutorily entitled to an oral hearing before turning to his constitutional due process argument.

1.    *Section 2023.030 Did Not Require an Oral Hearing*

Seiden premises his statutory argument on section 2023.030, which was the basis for KGM3's sanctions motion. That statute provides that a court may impose sanctions for "misuse of the discovery process" "after notice to any affected party, person, or attorney, and after opportunity for hearing." (*Ibid*.)  Seiden focuses on the phrase "opportunity for hearing," asserting it "mean[s] that an actual hearing must be held" (bold and italics omitted) regardless of his failure to file a written opposition.

---

[8] Seiden does not contend the trial court was required to hold an oral hearing to receive evidence.  Evidence on a motion "must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown." (Cal. Rules of Court, rule 3.1306(a).) Furthermore, a party who seeks to present oral evidence must request leave at least three court days before the hearing. (*Id.,* rule 3.1306(b).)  Seiden did not make any such request here and does not identify any evidence he would have sought to present at an in-person hearing.

We disagree. As our high court observed in *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, "The terms 'hear' and 'hearing' are not defined in the Code of Civil Procedure. The usual and ordinary meaning of these words most commonly includes an auditory component, but when used in a legal sense they do not necessarily encompass oral presentations. . . . [¶] Accordingly, California courts have concluded that use of the terms 'heard' or 'hearing' does not require an opportunity for an oral presentation, unless the context or other language indicates a contrary intent." (*Id.* at p. 1247, fn. omitted.)

In *Lewis*, the court addressed whether an oral hearing is statutorily required when a court issues a peremptory writ of mandate or prohibition in the first instance. The court concluded that section 1088, which provides, " 'The case must be heard by the court' " when a court issues a peremptory writ in the first instance, does not require an oral presentation. (*Lewis v. Superior Court*, *supra*, 19 Cal.4th at pp. 1245, 1250-1251, italics omitted.) Although the court noted various "references [in the statutes and a rule of court] to setting a time for, and hearing, the argument regarding a petition for a prerogative writ," those references "appear in provisions that apply only if a return is filed," not where a court issues a writ in the first instance. (*Id.* at p. 1250.) Accordingly, the high court held that, read in context, "the term 'heard' means the consideration and determination of a case, and does not require, invariably, the presentation of oral argument." (*Id.* at p. 1251.)

Section 2023.030 requires an "opportunity for hearing" before sanctions can be imposed. This language does not suggest that the "opportunity for hearing" must include an oral

11

component when no timely opposition was filed.[9]  Seiden does not acknowledge the *Lewis* decision, nor does he identify any other provisions of section 2023.030 or the Discovery Act that show "hearing" in this context necessarily must include oral argument in the circumstances present here.  Seiden received an "opportunity for hearing" as required by section 2023.030; he waived it by failing to file an opposition to the motion.  We decline to read section 2023.030 as permitting a party not to file a timely opposition and then to sandbag the movant by making untimely arguments orally in opposition to a sanctions request for the first time at the noticed hearing.

At oral argument, Seiden claimed that he would not have made such untimely arguments and would have limited his oral presentation to (1) requesting a continuance, and (2) contending that e-mail service of the sanctions motion was improper despite his actual notice of that motion because he was self-represented at the time the motion was filed.  Both these requests could have, and should have, been raised by the time Seiden's opposition was due.  Requiring an oral hearing to present such claims would require us to disregard *Lewis* and impose an oral hearing requirement in every case so that at a minimum a party who did not timely oppose a motion could make an oral request for a continuance.  This we cannot do, as "we are bound to follow the decisions of our Supreme Court." (*Estate of Franco* (2023) 87 Cal.App.5th 1270, 1280).

Seiden relies on *People v. Hundal* (2008) 168 Cal.App.4th 965, *In re Marriage of Hublou* (1991) 231 Cal.App.3d 956, and

_____

[9] We need not and therefore do not address whether section 2023.030 requires an oral hearing when timely opposition is filed.

*McCullough v. Commission on Judicial Performance* (1989) 49 Cal.3d 186 to assert section 2023.030 statutorily entitled him to a hearing to present argument.  None are persuasive authority for that proposition.

*Hundal* reversed a monetary sanction imposed under a different statute, section 177.5.  (*People v. Hundal, supra*, 168 Cal.App.4th at p. 969.)  Even if one considers section 177.5's statutory requirement of an " 'opportunity to be heard' " (*People v. Hundal*, at p. 969, quoting § 177.5) equivalent to section 2023.030's requirement of an "opportunity for hearing," the Court of Appeal reversed in *Hundal* because the trial court provided the sanctioned party with no notice or opportunity to respond at all before imposing the sanction.  (*People v. Hundal*, at pp. 968, 970.)  Here, in contrast, Seiden received notice and an opportunity to respond before the court imposed the monetary sanction.  Nothing in *Hundal* suggests an oral hearing was required in the circumstances before us.

*In re Marriage of Hublou, supra*, 231 Cal.App.3d at page 964 likewise involved a different statute (former Civ. Code, § 4370.6, subd. (b)) that required an "opportunity . . . to be heard."  (*Ibid.*)  The *Hublou* court referred in dicta to this language in former Civil Code section 4370.6 imposing a "hearing requirement[]" before disclaiming any reliance on that statute to decide the case before it.  (*In re Marriage of Hublou*, at p. 965, fn. 5.)  Regardless of it being dicta, the *Hublou* court's statement merely recognized the statute required an opportunity to be heard; it nowhere stated this hearing requirement mandated an oral hearing.  Further, *Hublou* was decided before the Supreme Court's *Lewis* decision, which made clear that statutory language using variants of the word "hearing" do not require an oral

13

presentation absent more specific directives. (*Lewis v. Superior Court, supra,* 19 Cal.4th at pp. 1245, 1250-1251.)

In *McCullough v. Commission on Judicial Performance, supra,* 49 Cal.3d at page 195, the language of the statute at issue, Penal Code section 1050, subdivision (d), clearly contemplated the trial court would hold a live hearing, in contrast to the language in section 2023.030 at issue here. (See Pen. Code, § 1050, subd. (d) [providing trial court "shall hold a hearing" when deciding whether to impose sanctions under the statute, and further providing, "At the conclusion of the hearing, . . . if [the court] finds that there is good cause, [it] shall state on the record the facts proved that justify its finding"].) Section 2023.030 contains no similar language mandating an oral hearing in all circumstances.

Lastly, Seiden contends that California Rules of Court, rule 3.1348 (rule 3.1348) required an oral hearing on KGM3's motion for sanctions. We are not persuaded. The rule provides: "(a) . . . [¶] The court may award sanctions under the Discovery Act in favor of a party who files a motion to compel discovery, even though no opposition to the motion was filed, or opposition to the motion was withdrawn, or the requested discovery was provided to the moving party after the motion was filed. [¶] (b) . . . [¶] The failure to file a written opposition or to appear at a hearing or the voluntary provision of discovery shall not be deemed an admission that the motion was proper or that sanctions should be awarded." (*Ibid.*) Seiden focuses on the language in subdivision (b) of the rule, but nothing in that language requires an oral hearing; it merely provides that, *if* there is a hearing and a party does not appear, that circumstance

14

shall not be considered by the court to be an admission that the motion should be granted or sanctions imposed.

The purpose of rule 3.1348 is to clarify that a court can conclude a party has "unsuccessfully" opposed a discovery motion, which is sanctionable conduct under section 2023.010, subdivision (h), even when the party does not actively oppose the motion (such as by filing a written opposition). (Judicial Council of Cal., Civ. & Small Claims Advisory Com. Rep., Discovery Rules (amend Cal. Rules of Court, rule 335 and adopt rule 341) (2000) p. 2.) Subdivision (b) of rule 3.1348 specifies that, where a party does not actively oppose a discovery motion, the court should base its determination whether to grant the motion and impose sanctions on the merits of the motion regardless of whether the motion was opposed. (See Judicial Council of Cal., Civ. & Small Claims Advisory Com. Rep., *supra*, p. 1.) The court rule nowhere states an oral hearing is required; it simply prohibits certain inferences from a failure to oppose a motion or appear at a hearing if one is held.

2. *Constitutional Right to Procedural Due Process*

Seiden contends procedural due process required permitting him to present oral argument on KGM3's sanctions motion despite failing to file an opposition to the motion. We disagree.

In interpreting the federal constitution, the United States Supreme Court has held, "the right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations. Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised. Equally certainly it has

15

left wide discretion to Congress in creating the procedures to be followed in both administrative and judicial proceedings, as well as in their conjunction." (*Federal Communications Commission v. WJR, The Goodwill Station, Inc.* (1949) 337 U.S. 265, 276 [69 S.Ct. 1097, 93 L.Ed 1353].)  Applying this principle, federal courts have uniformly held there is no constitutional right to present oral argument on various motions, including motions to dismiss and for summary judgment.  (*Greene v. WCI Holdings Corp.* (2d Cir. 1998) 136 F.3d 313, 316 [collecting cases]; *Dredge Corporation v. Penny* (9th Cir. 1964) 338 F.2d 456, 462, fn. 14 ["The opportunity to be heard orally on questions of law is not an inherent element of procedural due process, even where substantial questions of law are involved"].)

Seiden does not rely on the federal constitution, and instead claims he was entitled to an oral hearing under the California constitution's due process clause.  "In light of the virtually identical language of the federal and state guarantees," our Supreme Court has "looked to the United States Supreme Court's precedents for guidance in interpreting the contours of our own due process clause and have treated the state clause's prescriptions as substantially overlapping those of the federal Constitution."  (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.)  Seiden cites no cases and provides no argument to support his contention that our state constitution provides greater procedural rights in the context of oral argument on civil law and motion matters than does the United States Constitution, and thus we do not consider the point.  (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [appellate court may "treat [an] issue as abandoned" where a party makes a "conclusory presentation,

16

without pertinent argument or an attempt to apply the law to the circumstances of this case"].)

Seiden instead relies on *Barrientos v. City of Los Angeles* (1994) 30 Cal.App.4th 63, but the court in that case did not consider what type of hearing is required before a court can impose sanctions. *Barrientos* reversed an order imposing sanctions because the trial court did not give notice of its intent to impose sanctions or any opportunity to respond before issuing its sanctions order.[10] (*Id.* at pp. 67-68, 70-71.) In this case, Seiden received notice of KGM3's sanctions motion and had the opportunity to respond via a written opposition. As noted above, Seiden was not denied an opportunity for hearing; he did not avail himself of the opportunity afforded him by failing to file an opposition. Having waived that opportunity, due process did not require giving him a do-over at an oral hearing.

Seiden also cites *In re Marriage of Duris & Urbany* (2011) 193 Cal.App.4th 510, for the proposition that procedural due process requires a court to hold an oral hearing before imposing sanctions. The case does not stand for this proposition. The court held that procedural due process requires " '[n]otice prior of

---

[10] The *Barrientos* court stated the attorneys who were sanctioned "should have been provided with an opportunity to explain, on the record, their conduct *before* the court made its decision." (*Barrientos v. City of Los Angeles*, *supra*, 30 Cal.App.4th at p. 71.) In the context of the case, where the court imposed sanctions during a live hearing, we do not interpret this statement to mean that an opportunity to respond in writing would not have been sufficient, but as a recognition that the judge and the attorneys were present in court and the judge should have taken the opportunity to allow the attorneys to argue against sanctions before issuing his order.

17

imposition of sanctions' " and concluded a court erred in sanctioning a party because it failed to provide her with notice that it was considering sanctions before issuing its sanctions order during a live hearing. (*Id.* at p. 513.) Here, Seiden received prior written notice and had an opportunity to submit opposition concerning the propriety of the requested sanctions.[11]

## C. Seiden Forfeited any Challenge to the Trial Court's Order Based on Improper Service of the Sanctions Motion

KGM3 served Seiden with its sanctions motion electronically. Seiden contends we must reverse because this was improper service as he did not consent to electronic service in the manner required by section 1010.6, subdivision (c) for pro per litigants. KGM3 asserts that electronic service on Seiden was proper because his former counsel, who represented him at the beginning of the case, had agreed to electronic service. KGM3 also points out it electronically served Seiden in connection with its sanctions motion on several occasions and Seiden never complained that electronic service was improper, and did not raise the issue with the trial court in his motion to set aside.

Seiden's challenge based on purported improper service of the sanctions motion fails because he never raised his claim in the trial court. KGM3 initially filed its sanctions motion on March 29, 2023, along with an ex parte application to advance the hearing date, serving both on Seiden by e-mail. Seiden

---

[11] In light of our conclusion that the trial court did not err in failing to hold oral argument on KGM3's sanctions motion, we need not address whether Seiden has shown, or needs to show, the purported error prejudiced him.

18

clearly received both, as later that same day he filed an opposition to the application. Nowhere in Seiden's opposition did he claim that electronic service of the motion or application was improper. In addition, on April 13, 2023, Seiden filed his own ex parte application to continue the hearing on the sanctions motion to give him time to retain counsel; again, Seiden did not assert any problem with service of the motion. Seiden served his ex parte application on KGM3 by e-mail, with a proof of service indicating that the method of service was "[b]ased on a court order or an agreement of the parties to accept service by e-mail or electronic transmission."

KGM3 refiled and served its sanctions motion again on May 15, 2023, to obtain a new hearing date after the case had been reassigned to a different judge. Seiden received actual notice of the new hearing date, as he acknowledged receipt in an e-mail to opposing counsel, and could have filed an opposition to the sanctions motion objecting to the method of service. Seiden argues that, had he filed an opposition on this ground, the trial court might have deemed his objection to service waived if he had also argued the merits of the motion. This argument is specious. First, Seiden could have filed an opposition limited to an objection based on lack of proper service. (E.g., *Robinson v. Woods* (2008) 168 Cal.App.4th 1258, 1267-1268.) Second, even the authorities on which Seiden relies permit filing an opposition that includes objection to allegedly defective notice along with substantive opposition without waiver of the notice argument. (*Id.* at p. 1267; *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697-698.)

Seiden's failure to object to allegedly defective service continued past the hearing date. Seiden received notice on

19

June 13, 2023, that the court had ruled on KGM3's sanctions motion that day, and yet he made no effort to raise the issue of defective service with the trial court before filing this appeal. He filed a motion to set aside, in which he argued in part the court's June 13 ruling should be set aside because there had been no live hearing, but he did *not* challenge the ruling on the ground of defective service. Nor did he file a motion for reconsideration under section 1008, or otherwise raise the issue of purportedly improper service with the trial court.[12] (See *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 828 [holding the plaintiffs waived claim of error "[b]ecause [they] did not take advantage of opportunities to avoid in the trial court the problem about which they now complain on appeal," including not filing a motion for reconsideration under § 1008].)

Under these circumstances, Seiden forfeited his claim of defective service. "In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.) "The forfeiture rule generally applies in all civil and criminal proceedings. [Citations.] The rule is designed to

---

[12] In September 2023, after he filed this appeal, Seiden raised the issue of defective service in his opposition to a motion for attorney's fees filed by KGM3. The trial court did not address Seiden's claim, correctly concluding the attorney's fees motion was not the proper procedural vehicle for Seiden to challenge the June 13, 2023 ruling on grounds of allegedly invalid service.

advance efficiency and deter gamesmanship.  As we explained in *People v. Simon* (2001) 25 Cal.4th 1082 . . . : ' " " ' "The purpose of the general doctrine of waiver [or forfeiture] is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . ." ' [Citation.]  ' "No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." . . .'  [Citation.]" ' "  (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264, italics omitted; see *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [" 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method' "].)

Seiden urges us to exercise our discretion to consider this issue even though it was not presented to the trial court, contending it is purely an issue of law.  We are not persuaded that this issue presents purely legal questions, given for example that the record includes no explanation of the court order and/or agreement regarding electronic service referenced in Seiden's April 13, 2023 proof of service.  In any event, Seiden provides no compelling reason why we should consider his claim of defective service which could have and should have been addressed in the trial court.

**D.    Seiden's Challenge to the Sufficiency of the Trial Court's Minute Order Fails**

Seiden lastly contends the trial court's order on KGM3's sanctions motion did not properly apprise him of the grounds for, authority for, or the amount of the monetary sanction. This argument is meritless. The order indicated it concerned "[c]ross-[d]efendants' motions scheduled for [June 14, 2023]," which included KGM3's sanctions motion, and that "[t]he motions are well-taken, unopposed and granted in their entirety." This adequately incorporated the grounds and authority for the imposition of sanctions, which were set forth in KGM3's motion. The order also stated that the motions, including KGM3's sanctions motion, were "granted in their entirety," making clear it had granted KGM3's request for $5,835 as a monetary sanction.

Seiden relies on *Olson Partnership v. Gaylord Plating Lab, Inc.* (1990) 226 Cal.App.3d 235, but that case is distinguishable because it involved sanctions imposed under section 128.5, which expressly provided the order " 'shall recite in detail the conduct or circumstances justifying the order.' " (*Id.* at p. 240, fn. 5, quoting former § 128.5, subd. (c).) The other case Seiden cites, *Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970, is likewise inapposite because it involved sanctions imposed under section 177.5, which similarly requires the " 'order . . . recite in detail the conduct or circumstances justifying the order.' " (*Caldwell*, at p. 977, quoting § 177.5.) Here, KGM3 sought monetary sanctions against Seiden pursuant to section 2023.030. Seiden identifies no requirement that an order imposing monetary sanctions under this statute recite the basis for the sanctions in any particular detail.

## DISPOSITION

We affirm the order imposing a monetary sanction of $5,835 on Seiden.  KGM3 is awarded its costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

KLATCHKO, J.*

---

*Judge of the Riverside County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.